**STATE of Missouri, Respondent,**

v.

**David L. O'HAVER, Appellant.**

**No. WD 57419.**

Missouri Court of Appeals, Western District.

Oct. 3, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 2000.

Application for Transfer Denied Jan. 23, 2001.

Kent Denzel, Asst. State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barbara K. Chesser, Asst. Atty. Gen., Jefferson City, for respondent.

Before SPINDEN, C.J., and HOWARD and HOLLIGER, JJ.

HOWARD, Judge.

David L. O'Haver appeals from his convictions of second degree murder, § 565.021,[1] and first degree arson, § 569.040. O'Haver raises three points on appeal. First, he contends the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence, in accepting the jury's verdicts on murder and arson, and in sentencing him on both counts because there was insufficient evidence that he started the fire that killed Jeanne O'Haver, his wife. Second, he contends the trial court plainly erred in failing to declare a mistrial sua sponte based on alleged improper comments by the prosecutor. Third, Appellant claims the trial court erred in overruling his objection to the prosecutor's alleged improper argument regarding Appellant's belief about insurance proceeds.

We affirm.

### Facts

Viewed in the light most favorable to the verdicts, the evidence at trial was as follows. On April 7, 1998, Appellant and his wife, Jeanne O'Haver, got home from having worked the 11:00 p.m. to 7:00 a.m. shift at Perry Machine and Die. After they did their chores, Jeanne had a drink of tequila, and Appellant went to bed.

Shortly before 10:00 a.m., Jeanne answered a phone call from the elementary school where Appellant's son, Brandon, attended school. The principal called to discuss Brandon's suspension from the school bus. During the conversation, Jeanne told the principal, "You cannot believe how bad it is at this house." Although Jeanne had

been drinking alcohol, at the time of the call she did not sound intoxicated.

After the phone call, Jeanne woke up Appellant. She told him that she couldn't take it anymore, and that she wanted Appellant to pack his and Brandon's stuff and get out. After some discussion, Appellant began to pack up some of his and Brandon's belongings. He loaded the items into the back of his truck.

At one point, when Appellant went outside, he saw that a fire had been started in the yard. He eventually told police that his wife had put some things out in the yard, poured gas on them, and set them on fire. Among the items in the fire were Brandon's mattress, some magazines, and some toys. Eventually, Appellant went back to the house and asked Jeanne for a drink of water.

Appellant testified that he drove directly to Brandon's school at that point. He arrived at the school sometime between 12:35 p.m. and 12:40 p.m. That drive, going the speed limit, takes approximately seventeen minutes. Thus, the evidence showed that Appellant may have left his house sometime between 12:18 p.m. and 12:23 p.m.

At some time between 12:15 p.m. and 12:17 p.m., Audrey Nutt, who lived approximately two miles from the O'Haver home, saw a "great big mushroom of smoke go up" in the direction of the house. At this point, the fire had been burning somewhere between ten and thirty minutes, which meant that it started at some point between 11:45 a.m. and 12:07 p.m., before Appellant left for the school.

Ms. Nutt got in her car and drove toward the fire. Eventually she saw that the O'Haver home was on fire and flames were coming out between the roof and the siding. Thereafter, she contacted fire officials, who found Jeanne's body in the trailer. Jeanne had died of smoke inhalation, and her body had burned beyond recognition.

---

1. All statutory references are to RSMo 1994.

In the meantime, when Appellant got to Brandon's school, he appeared angry, aggressive, and as if he were in a "great big hurry." He saw Brandon, told him to clean out his desk and then told school officials that Brandon would not be returning to that school. Appellant and Brandon then went to Appellant's parents' home, where Appellant received a call that his home was on fire.

When Appellant arrived on the scene, Jeanne's daughter, Heather Woodrow, was there. Her brother had come to her house and told her that their mother's home was on fire. Ms. Woodrow's brother approached Appellant and told him that Jeanne was dead.

The fire investigation revealed that the house fire had been started at the front door, where a gas product had been poured. There was no physical connection between the fire that had burned in the yard and the house fire. In addition, a nozzle like the type found on a plastic gas can was found in the yard.

On July 8, 1998, Appellant was charged by information with first degree murder, § 565.020, and first degree arson, § 569.040. The case was tried before a jury. Appellant testified that he did not set the fire, and he put on a witness who testified that he saw him driving by at around 12:00 p.m.

Following trial, Appellant was acquitted of first degree murder and convicted of the lesser included offense of felony murder, § 565.021. He was also convicted of first degree arson. Appellant was sentenced to consecutive terms of thirty years in prison. This appeal follows.

**Point I**

Appellant's first point on appeal is that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence, in accepting the jury's verdicts on murder and arson, and in sentencing him on both counts because the State failed to prove beyond a reasonable doubt the offenses charged in that it did not produce sufficient evidence to convince a rational trier of fact that he started the fire that killed Jeanne.

In determining the sufficiency of the evidence on appeal, we view the evidence and all inferences drawn therefrom in the light most favorable to the verdict, and we disregard evidence and inferences contrary to the verdict. *State v. Ervin,* 979 S.W.2d 149, 159 (Mo. banc 1998), *cert. denied,* 525 U.S. 1169, 119 S.Ct. 1090, 143 L.Ed.2d 91 (1999). An appellate court neither weighs the evidence, nor determines the reliability or credibility of witnesses, but rather limits its determination to whether there is substantial evidence from which a reasonable jury might have found the defendant guilty beyond a reasonable doubt. *State v. Hill,* 970 S.W.2d 868, 872 (Mo.App. W.D.1998). "Substantial evidence is evidence from which the trier of fact could reasonably find the issue in harmony with the verdict." *State v. Gomez,* 863 S.W.2d 652, 655 (Mo.App. W.D.1993).

As Appellant points out, the key to both convictions was proof of the arson charge, because Appellant was found guilty of felony murder. To sustain a conviction for first degree arson, § 569.040, the State must prove (1) that the defendant knowingly damaged a building or inhabitable structure, (2) by starting a fire or causing an explosion, (3) with persons then present or in near proximity, and (4) thereby recklessly placing such person in danger of death or serious injury. *State v. Kelley,* 901 S.W.2d 193, 201 (Mo.App. W.D. 1995). Appellant concedes that the fire was intentionally set by someone, either Jeanne or him, pouring gasoline in the living room of the residence and lighting it. Appellant's contention is that there was not sufficient evidence to show that he, rather than Jeanne, started the fire.

"All elements of arson may be proven by circumstantial evidence. Circumstances need not be absolutely conclusive of guilt and need not demonstrate

impossibility of innocence." *State v. Bolds*, 913 S.W.2d 393, 398 (Mo.App. W.D. 1996) (citations omitted). In fact, because arson is a crime usually committed in stealth and seldom in view of witnesses, "the prosecutor must ordinarily prove a defendant's guilt by circumstantial evidence." *State v. Smith*, 770 S.W.2d 469, 473 (Mo.App. W.D.1989).

> Any societal distrust of circumstantial evidence has long been abandoned. We no longer need to hold circumstantial evidence cases to a higher standard than direct evidence cases. If a jury is convinced beyond a reasonable doubt, so long as the evidence meets the minimal appellate standard required by due process, we need not disturb the result simply because the case depended wholly, mostly, or partially upon circumstantial proof.

*State v. Grim*, 854 S.W.2d 403, 406 (Mo. banc 1993).

While opportunity alone is insufficient to support an arson conviction, evidence of opportunity and motive aids in determining guilt. *Bolds*, 913 S.W.2d at 398. Where a fire is deliberately set, evidence that the defendant had the means, opportunity and motive for setting the fire will sustain a finding of defendant's criminal agency. *Id.*

Appellant contends that he was seen leaving the home twenty minutes before any smoke first appeared, he was seen by several people immediately thereafter and had no odors of gasoline or smoke about him, and Jeanne was alive when the fire started and was at some point next to an open door. Appellant argues that there was no basis other than speculation for the jury to conclude that he set the fire.

In *State v. Nelson*, 674 S.W.2d 220, 222 (Mo.App. S.D.1984), the defendant was convicted of spousal homicide by manslaughter as a result of a fire in which her husband died. The southern district of this court found that the following evidence indicated the defendant had the means, opportunity and motive to set the fire: 1) there was plenty of gasoline around the house; 2) only the defendant and the victim were at the residence at the time the fire was set; 3) the victim had been drinking and ordinarily slept heavily; 4) the defendant had a bad temper; and 5) the defendant and the victim had quarreled shortly before the fire was set. *Nelson*, 674 S.W.2d at 224–25. The court found that this evidence was sufficient to support a finding that the defendant was the incendiary. *Id.* at 225.

Similarly, in the present case, we find that the evidence viewed in the light most favorable to the verdict indicates that Appellant had the means, opportunity and motive to set the fire. The evidence indicates that 1) the fire that engulfed the trailer was caused by an accelerant; 2) the accelerant had been placed at the entrance of the trailer; 3) there was gasoline at the house on the day the fire was set, and a nozzle of the type found on a plastic gas can was found at the scene; 4) the fire began at some point between 11:45 a.m. and 12:07 p.m., and Appellant may not have left the house until some point between 12:18 p.m. and 12:23 p.m.; 5) only Appellant and Jeanne were at the house at the time of the fire; and 6) Jeanne had just kicked Appellant out of the house and had just set fire to his and Brandon's possessions in the yard.

We find that there was sufficient evidence to support Appellant's convictions of arson and felony murder. Point I is denied.

## Point II

Appellant's second point on appeal is that the trial court plainly erred in failing to declare a mistrial sua sponte because of the prosecutor's improper remarks during closing argument. Appellant contends that the prosecutor's improper remarks created a manifest injustice and miscarriage of justice by leading the jury to convict him based on "facts" not in evi-

dence and for reasons wholly irrelevant to his guilt.

Because Appellant did not object to any of these remarks at trial, we are limited to plain error review under Rule 30.20. *State v. Cobb,* 875 S.W.2d 533, 537 (Mo. banc 1994). "Relief should be rarely granted on assertion of plain error to matters contained in closing argument, for trial strategy looms as an important consideration and such assertions are generally denied without explication." *State v. Wood,* 719 S.W.2d 756, 759 (Mo. banc 1986). "[S]tatements made in closing arguments rarely affect substantial right[s] or result in manifest injustice or the miscarriage of justice so as to result in plain error requiring reversal of a conviction." *State v. Cruz,* 971 S.W.2d 901, 903 (Mo. App. W.D.1998), quoting *State v. Higgins,* 619 S.W.2d 94, 95 (Mo.App.1981). "[E]rrors occurring in closing arguments justify 'relief under plain error only when the errors are determined to have a decisive effect on the jury. The burden is on the defendant to demonstrate the decisive effect' of the statement." *Cruz,* 971 S.W.2d at 903, quoting *State v. Girardier,* 801 S.W.2d 793, 796 (Mo.App.1991). Furthermore, a trial court should declare a mistrial sua sponte only in exceptional circumstances. *State v. Clay,* 975 S.W.2d 121, 134 (Mo. banc 1998).

Attorneys are allowed substantial latitude in closing argument, and may suggest reasonable inferences to be drawn from the evidence. *State v. Albanese,* 9 S.W.3d 39, 56 (Mo.App. W.D.1999). However, "[a] prosecutor may not make statements that imply a knowledge of facts not before the jury." *State v. Shurn,* 866 S.W.2d 447, 460 (Mo. banc 1993). Furthermore, it is not permissible to misstate the evidence. *State v. Stiltz,* 647 S.W.2d 168, 169 (Mo.App. S.D.1983).

Appellant contends that the prosecutor misstated the evidence to the jury and told them facts outside the record by making the following remarks during closing argument:

1) Appellant "[h]ad somebody to make a big chunk of down payment on that little trailer out in the middle of the country."

2) "[B]ecause [Appellant] knew that it took quite a bit of liquid courage for [Jeanne] to do what she did, to enable her to have the strength to get rid of this guy, he knew she'd be vulnerable."

3) "So [Appellant] waited until [Jeanne] was in the back room, probably with the bedroom door locked because she wanted to stay out of his way while he was loading all this stuff in and out of the house."

As to statements one through three, the State concedes that they were "misstatements of the evidence or that they constituted argument about matters outside of the record." However, we find that Appellant has not met his burden of demonstrating that these remarks had a decisive effect on the jury.

4) When Appellant arrived at Brandon's school, "you know what kind of condition he was in when he got there. He was scary, angry. He was mad enough that you heard Mr. Knight our bus supervisor say 'I wasn't going to leave that building. Scared me.'"

The testimony at trial was that Appellant was "very anxious and angry," "very angry," and "had a very aggressive demeanor, stance," that he was "assertive and stood rigidly." Karen Lawzano testified that when Appellant "looked at me very determinedly and said 'He won't be back,' it was really scary." Todd Knight testified that he did not leave while Appellant was at the school because it appeared to be a "volatile situation" and he just felt that he should be there. We find that the prosecutor's remarks were a reasonable inference from the trial testimony. "Furthermore, the instructions given to the jury safeguard against harm that might otherwise result from exaggerated closing

argument. . . ."[2] *State v. Clayton,* 995 S.W.2d 468, 479 (Mo. banc), *cert. denied,* 528 U.S. 1027, 120 S.Ct. 543, 145 L.Ed.2d 421 (1999).

5) "[C]an you come up with a single logical reason why Jeanne O'Haver would allow the defendant to move all of his property out of this trailer, to take all of his stuff out and then torch her own photo albums, her own pictures, her own memory of her family, her own clothes, her own things to allow the defendant to escape with his and torch hers?"

As Appellant suggests, there was no evidence that Jeanne owned photo albums or pictures. However, Appellant has again failed to show that this reference had any effect on the jury, let alone a decisive one.

6) "Only one of these two people we know about was angry and wild and crazy immediately after this incident. Only one. And again he was scary and he was out of control."

As with statement four, we find that this was a reasonable inference from the trial testimony.

7) **Referring to Appellant getting a drink of water from Jeanne before he left, the prosecutor said that Appellant said, "you know she really wasn't all that upset at that point in time."**

■ Appellant testified that when Jeanne gave him a drink of water before he left, she "just stared" at him and was "aggravated" and "disgusted." We find that the prosecutor's remark was a reasonable inference from Appellant's testimony. Taken in context, it was reasonable to infer that Jeanne was not all that upset when she gave him the water, as compared to earlier, when she told Appellant to leave and burned his belongings.

8) **"You can believe that this lady decided to burn herself alive after her life was just getting ready to get better or you can believe that she was murdered.**

Those are really the only two possibilities that have been offered to you, ladies and gentlemen."

Appellant argues that these remarks were improper because the prosecutor did not set forth the defense theory that Jeanne set the fire herself and was accidentally trapped in it. However, as the State points out, the prosecutor was not required to assert the defense theory as a "possibility." Furthermore, the defense theory was clearly before the jury as a possibility.

■ Next Appellant contends that the prosecutor appealed to the jury's sympathy for Jeanne by telling them that "[w]hatever hopes, dreams, aspirations she may have had for the rest of her life would be unfulfilled because of the defendant. Whatever time she might have spent with this grandbaby she's holding here were unfulfilled because of the defendant. A life for a life, ladies and gentlemen." Brief, isolated, nonrepetitive remarks of the State in closing argument rarely call for plain error relief. *State v. Lyles,* 996 S.W.2d 713, 717 (Mo.App. E.D.1999). The most that can be said of the prosecutor's remarks is that they were irrelevant. We find that these remarks do not rise to the level of manifest injustice necessary to grant plain error relief. *See State v. Jackson,* 750 S.W.2d 576, 579–80 (Mo.App. E.D. 1988) (finding that the defendant was not prejudiced by the prosecutor's statement, "Think of the changes this woman has seen in her life, in transportation, in electronics, T.V. I mean, think of the changes. She has lived from 1900 to 1985 on God's earth, and then she dies because these two guys decide to rip her off, and they want to eliminate a witness.").

■ Appellant also contends that the prosecutor led the jury to believe that defense counsel improperly practiced "slick lawyering" if he argued that Appellant's statement that "I will never tell any-

2. The jury was instructed that arguments by counsel do not constitute evidence.

one I did it" meant anything other than what the prosecutor claimed it meant, when the most reasonable interpretation of the statement is that Appellant would not admit guilt because he was not guilty. The prosecutor's remarks were that Appellant "expected to be arrested. He was shocked that they didn't. 'Aren't you going to take me away?' ... Said 'I will never tell anyone I did it.' Now, that can be explained away by slick lawyering. That could be explained away. But I submit that those aren't the words that an innocent man would say if he was just asked 'Did you murder your wife?' "

At trial, the interrogating officer testified as follows:

Q. It was during this second interview that he told you he wasn't going to admit to you that he started any fire; is that correct?

A. That was not the words he used.

Q. What were the words he used?

A. He said "I'll never tell anyone I done it."

Q. Okay. And that was in response to your having accused him of starting the fire; correct?

A. Yes, I told him I believed he was responsible for the fire.

Q. Okay. So he didn't just up and deny it out of the blue, it was after you accused him; true?

A. He didn't really deny it. He said "I'll never tell anyone I done it."

\* \* \* \* \*

We find that it was reasonable for the prosecutor to suggest that Appellant's statement meant that he started the fire, but would never admit it. Defense counsel had the opportunity to suggest that the other interpretation was the proper one—that Appellant would never tell anyone he did it because he was innocent.

■ Concerning the reference to "slick lawyering," "[p]ersonal attacks on defense counsel by a prosecutor are improper and objectionable. However, not all such attacks warrant reversal. An argument directed at the tactics or techniques of trial counsel rather than counsel's integrity or character is a permissible argument." *State v. Fritz,* 913 S.W.2d 941, 945 (Mo. App. W.D.1996) (citations omitted).

In *Lyles,* 996 S.W.2d at 716, the prosecutor stated in closing argument that "[d]efense counsel is either confused or she's lying or trying to mislead you." The eastern district held that while the prosecutor improperly conducted a personal attack on defense counsel by positing that she was lying, the remark was isolated and did not warrant reversal on plain error review. *Id.* at 716–17.

■ We find that the prosecutor's isolated reference to "slick lawyering" was directed at the tactics or techniques, rather than the character or integrity, of defense counsel, and was therefore not unduly prejudicial. *See State v. Ward,* 807 S.W.2d 225, 226 (Mo.App. E.D.1991) (finding prosecutor's remark that defense counsel engaged in "trickery" during the trial did not warrant reversal on plain error review because the remark was directed at the tactics or techniques of defense counsel, not at the character or integrity of defense counsel).

Appellant relies on *State v. Greene,* 820 S.W.2d 345 (Mo.App. S.D.1991), in support of his argument that the prosecutor's remarks constituted reversible error. In *Greene,* the court held that a prosecutor's personal attack on defense counsel during closing argument constituted reversible error. *Greene,* 820 S.W.2d at 347. However, in *Greene,* the prosecutor directly suggested that defense counsel was lying. *Id.* at 346–47. The remarks by the prosecutor in this case, while not to be condoned, are less egregious than those in *Greene.* Moreover, in *Greene,* unlike in the present case, defense counsel objected to the prosecutor's remarks at trial. *Id.* Point II is denied.

### Point III

Appellant's third point on appeal is that the trial court erred in overruling his objection to the prosecutor's improper argument that Appellant "knew" that "whether he said his wife ... burned down this trailer or he did, they [the insurance company] weren't going to pay," when there was no such evidence and this was not a correct statement of the law in Missouri.

The prosecutor told the jury, "You know the other reason he didn't want to mention gasoline? 'Cause he wanted to be paid for this claim. He wanted his money. He wanted Grinnell Mutual or whatever company was insuring them to pay that money because he knew whether he said his wife, victim burned down this trailer or he did, they weren't going to pay. He didn't want to go there." Defense counsel objected on the basis that the prosecutor's remarks were a misstatement of the law. The trial court overruled the objection.

Appellant contends that by overruling his objection, the court led the jury to believe that the prosecutor was correct, that Appellant would not have collected on an insurance claim if Jeanne burned their trailer, and that this knowledge led him to lie about not seeing Jeanne set his property on fire. When the jury followed the court's direction on this question, Appellant contends, it was more likely to find him guilty because he would be seen as lying to protect his own interests and not to protect Jeanne.

 Appellant actually makes two arguments here. He contends that the prosecutor's remarks were improper because they misstated the law and because they misstated the evidence. The claim that the prosecutor misstated the law is properly preserved, as it was the basis for defense counsel's objection at trial and it was included in Appellant's motion for new trial. The claim that the prosecutor misstated the evidence, however, was not raised before the trial court, and therefore we review it only for plain error. *State v.*

*Vann,* 7 S.W.3d 407, 410 (Mo.App. W.D. 1999).

 "Misstatements of the law are impermissible during closing argument, and a positive and absolute duty rests upon the trial judge to restrain such arguments." *State v. Blakeburn,* 859 S.W.2d 170, 174 (Mo.App. W.D.1993). Depending on the insurance policy in this case, which is not in the record on appeal, Appellant may have been able to recover under the policy if Jeanne intentionally set the fire. *DePalma v. Bates County Mut. Ins. Co.,* 24 S.W.3d 766, 768 (Mo.App. W.D.2000); see also *DePalma v. Bates County Mut. Ins. Co.,* 923 S.W.2d 385, 388 (Mo.App. W.D.1996). However, we do not believe that the prosecutor's remarks were a statement of the law, but rather a statement of what the State believed was Appellant's belief about his ability to recover the insurance proceeds. Therefore, we find that the trial court did not err in overruling defense counsel's objection that the prosecutor's remarks misstated the law.

 We next consider Appellant's claim that the trial court plainly erred in allowing the prosecutor's remarks because they misstated the evidence. Arguably, it is a reasonable inference that Appellant lied to the police about Jeanne starting a fire in the yard because he did not want to risk losing $7,500 in insurance he had on the house, but the prosecutor's statement that Appellant "knew" that if Jeanne burned down the trailer he could not recover the insurance proceeds was not supported by the evidence. However, we find that any error in overruling Appellant's objection to the prosecutor's remarks was harmless. Appellant claims that because of the prosecutor's remarks, the jury was more likely to find him guilty because he would be seen as lying to protect his own interests, rather than Jeanne's reputation. This seed had already been planted in the minds of the jurors by Appellant's testimony that he would "probably" lie to protect his reputation or his interests, and that he

would "more than likely" lie to protect himself. Point III is denied.

The judgment of the trial court is affirmed.

SPINDEN, C.J., and HOLLIGER, J., concur.