**STATE of Missouri, Respondent,**

v.

**Renee M. BRUCE, Appellant.**

**No. WD 58875.**

Missouri Court of Appeals, Western District.

June 26, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 2001.

---

Gerald W. Furnell, Ronald L. Jurgeson, Lee's Summit, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea Mazza Follett, Asst. Atty. Gen., Jefferson City, for Respondent.

Before EDWIN H. SMITH, P.J., and SMART and HOWARD, JJ.

VICTOR C. HOWARD, Judge.

Appellant, Renee M. Bruce, appeals from the judgment entered on her convic-

tions of assault in the second degree and armed criminal action. She brings two points on appeal. First, she alleges that the evidence was insufficient to find her guilty of second degree assault beyond a reasonable doubt. Second, she alleges that the trial court erred in refusing her request to instruct the jury on the lesser included offense of assault in the third degree.

We affirm.

## Statement of Facts

The sufficiency of the evidence to support Ms. Bruce's conviction of second degree assault is in dispute. Viewed in a light most favorable to the verdict, the evidence adduced at trial showed:

On the night of August 11, 1999, Ms. Bruce went with some friends to Pete's Place, a bar in Grandview, Missouri, for karaoke. As Ms. Bruce and her friends sat in a booth, three women—Tara Monroe, Denise Hudson and Patrice Turner—walked by. Ms. Bruce stood up and proceeded to argue with Ms. Monroe. Ms. Bruce said to Ms. Monroe something along the lines of, "you crackhead bitch, you better leave my man alone." Ms. Monroe responded by "flipping her off" and saying "F——you." Ms. Hudson told Ms. Monroe to ignore Ms. Bruce, and the women separated.

While at the bar ordering drinks, Ms. Monroe received a phone call from her boyfriend and went to the parking lot to talk on her cellular phone. After the call ended, she decided to leave to meet her boyfriend. While in her car in the parking lot, she noticed Ms. Bruce come out of the bar. As Ms. Bruce went to her own car "to get something," the two women continued to exchange profanities. Shortly thereafter, as Ms. Monroe waited in her car for the traffic to clear so she could turn out of the parking lot, Ms. Bruce approached her car from the rear. Ms. Monroe got out of her car, and the women belligerently asked each other "what's up?" After further profanities and "pushes" were exchanged, Ms. Monroe got back in her car. As she did so, Ms. Bruce followed her and opened her car door. Ms. Monroe turned in her seat and attempted to kick Ms. Bruce back out of her car.

In the meantime, shortly after Ms. Monroe had gone out to take her call, Ms. Hudson realized that Ms. Bruce and the women who had been sitting with her when she exchanged words with Ms. Monroe were leaving the bar. Ms. Hudson went to the parking lot to check on the women and discovered Ms. Monroe kicking Ms. Bruce out of her car. Ms. Hudson then got between Ms. Bruce and Ms. Monroe and began to push them back away from each other, telling them not to fight "over this man." She also told Ms. Monroe to "leave, it's not worth this." As Ms. Hudson pushed Ms. Bruce away from Ms. Monroe, Ms. Bruce swung her arms and fists at Ms. Hudson "like a mad person." She continued swinging even as Ms. Hudson tried to explain to Ms. Bruce that she was not trying to fight Ms. Bruce but only wanted to break up her and Ms. Monroe.

It was eventually discovered that Ms. Bruce had a knife and that Ms. Hudson had been cut by Ms. Bruce. Ms. Turner then "jumped in" to try to stop Ms. Bruce. Ms. Turner tried unsuccessfully to talk Ms. Bruce into giving her the knife. Eventually, Ms. Bruce handed the knife over to her friend Marquita "Ki–Ki" Tellis, who had also come out to the parking lot. Ms. Monroe then rushed Ms. Hudson to the hospital in her car as Ms. Turner attempted to bandage Ms. Hudson's wounds. Ms. Turner soon discovered that she, too, had been cut on her right hand.

Ms. Bruce also left the scene in her car with Ms. Tellis, who still had the knife. As the women went to Ms. Bruce's house, Ms. Tellis threw the bloody knife out the window of the car.

At the hospital, Ms. Hudson's cuts on her leg and arm required extensive stitches, and additional surgery was required to repair the damage to the tendons and nerves in her hand. She had a cast on her hand for a month or two and could not work as a beautician for at least five months. She also lost feeling in her hand for about four months and had to undergo continuing physical therapy. Ms. Turner received ten stitches on one finger. The police investigated the incident at the hospital.

Ms. Bruce was subsequently charged by Amended Information with one count of assault in the first degree (Count I) and one count of armed criminal action (Count III) for her attack on Ms. Hudson. She was also charged with the same two charges in Counts II and IV for her attack on Ms. Turner. After a trial on May 9, 2000, a jury convicted Ms. Bruce on Counts I and III. After the jury deadlocked on Counts II and IV, the trial court declared a mistrial and dismissed those charges. On July 7, 2000, the trial court sentenced Ms. Bruce, as a prior offender, § 558.016,[1] to serve concurrent sentences of five years for second degree assault and three years for ACA in the custody of the Missouri Department of Corrections. She now appeals.

### Point I—Sufficiency of the Evidence [2]

Ms. Bruce contends that the evidence presented in this case was not sufficient to establish her guilt on assault in the second degree against Denise Hudson as charged in Instruction No. 6.

■■■ In reviewing the sufficiency of the evidence, we consider the evidence and all inferences reasonably drawn therefrom in a light most favorable to the verdict, disregarding evidence and inferences that are contrary to a finding of guilt. *State v. O'Haver*, 33 S.W.3d 555, 559 (Mo.App. W.D.2000). The jury, not this court, determines the reliability or credibility of the witnesses and assesses weight to the evidence. *Id.* On review, this court concerns itself only with determining whether the State produced substantial evidence from which a reasonable jury might have found Ms. Bruce guilty beyond a reasonable doubt. *Id.* " 'Substantial evidence is evidence from which the trier of fact could reasonably find the issue in harmony with the verdict.' " *Id.* (quoting *State v. Gomez*, 863 S.W.2d 652, 655 (Mo.App. W.D.1993)).

Section 565.060 sets forth the elements for second degree assault. Instruction No. 6, under which the jury convicted Ms. Bruce on Count I, was patterned on § 565.060.1(3). Under this section, the jury could find Ms. Bruce guilty of second degree assault if it found beyond a reasonable doubt that Ms. Bruce "[r]ecklessly cause[d] serious physical injury to [Ms. Hudson]." § 565.060.1(3). Ms. Bruce contends on appeal that the evidence was insufficient on both the elements of recklessness and *serious* physical injury.

### A. Recklessness:

■■■ Ms. Bruce first argues in her brief that:

There was no reckless action by [her] which caused any of Ms. Hudson's injuries. At the most, any "reckless" behav-

---

1. All statutory references are to RSMo 1994.

2. Both of Ms. Bruce's points on appeal relate to her conviction on Count I, so we do not address the remaining counts.

ior on the part of [Ms. Bruce] would have been as recklessly engaging in conduct creating a grave risk of serious physical injury. [She claims that] [t]his, however, could only lead to a conviction of assault in the third degree under § 565.070.2(4).

"A person 'acts recklessly' or is reckless when [s]he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4. Instruction No. 6 included this definition.

In support of her argument, Ms. Bruce focuses primarily on the actions of the other persons involved in the altercation. For example, she stresses the fact that Ms. Monroe had pushed or kicked Ms. Bruce out of the doorway of Ms. Monroe's vehicle before any actions commenced causing injury to anyone involved. She also claims that "[i]t was only after Ms. Hudson became a voluntary participant in the incident that she was placed in any danger"; that "Ms. Bruce testified that after the pulling began, she felt as those [sic] she was being choked by Ms. Hudson"; and that Ms. Hudson had broken Ms. Bruce's necklaces and threw them to the ground during the altercation. Ms. Bruce therefore contends that the evidence was insufficient to show the requisite recklessness because, she claims, "Ms. Hudson's instigation of all activity . . . resulted in any injury which she suffered."

Ms. Bruce's argument appears to be directed more at the issue of self-defense, on which issue the jury was also instructed and which defense it implicitly rejected. Although her argument is not entirely clear, she appears to suggest that she could not have acted recklessly because she did not "start it" and was only defend-

ing herself. She suggests that Ms. Hudson caused her own injuries, not Ms. Bruce. However, in determining whether her actions were reckless for purposes of a conviction of second degree assault, § 565.060.1(3), the initial focus is on *Ms. Bruce's* behavior, not primarily on the behavior of the victim.

Again, on appeal we must view the evidence and all reasonable inferences therefrom in a light most favorable to the verdict. *O'Haver*, 33 S.W.3d at 559. Ms. Monroe testified that when the incident began in the parking lot, she was trying to leave in her car when Ms. Bruce opened her car door. She was using her feet to push Ms. Bruce out of her car door when Ms. Hudson arrived. Ms. Hudson, who did not see that Ms. Bruce had a knife, placed herself in between Ms. Monroe and Ms. Bruce to try to separate them. As Ms. Bruce began hitting at Ms. Hudson, Ms. Hudson tried to tell Ms. Bruce that she was not trying to fight with her, but she was instead trying to separate her from Ms. Monroe and calm them down. It was then discovered that Ms. Bruce had a knife and that Ms. Hudson was bleeding. When Ms. Turner realized that Ms. Bruce was cutting Ms. Hudson, she also intervened to try to get the knife away from Ms. Bruce. Ms. Bruce eventually released the knife to her friend Ki Ki. Ms. Hudson's friends took her to the hospital immediately.

Despite her professed good intentions to stop the fight between Ms. Monroe and Ms. Bruce, Ms. Hudson had been cut at least four times as she tried to separate Ms. Bruce and Ms. Monroe. Ms. Bruce repeatedly swung the knife at Ms. Hudson as she tried to do this. This Court will not weigh the evidence, nor will we determine the reliability or credibility of witness testimony. *Id.* We need only determine whether there was substantial evidence from which a reasonable juror might have

found Ms. Bruce guilty beyond a reasonable doubt. *Id.* Viewed in this light, the evidence was sufficient for a finding that Ms. Bruce acted recklessly, as defined in § 562.016.4, *supra*, in swinging her knife at Ms. Hudson as Ms. Hudson tried to stop the fight between Ms. Monroe and Ms. Bruce.

### B. "Serious physical injury":

Ms. Bruce further argues that the State failed to produce sufficient evidence of "*serious* physical injury" to Ms. Hudson.

■ In order to convict Ms. Bruce of second degree assault under § 565.060.1(3), the jury was also required to find that the injury inflicted upon Ms. Hudson by Ms. Bruce was serious. Section 565.002(6) defines "serious physical injury" for second degree assault purposes as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." Instruction No. 6 also included this definition. Citing Judge Smith's dissent in *State v. Bledsoe*, 920 S.W.2d 538, 541 (Mo.App. E.D. banc 1996),[3] Ms. Bruce claims that Ms. Hudson did not suffer significant scarring and additional injuries that rise to the level of a "serious physical injury." We disagree.

■ Ms. Bruce's argument addresses the "serious disfigurement" portion of the definition of a "serious physical injury." As pointed out by the State, Ms. Bruce disregards the second portion of § 565.002(6)'s definition concerning the "protracted loss or impairment of the function of any part of the body." We do not address Ms. Bruce's "disfigurement" argument because the evidence was sufficient to find that Ms. Hudson suffered a "serious physical injury" under § 565.002(6).

" 'Protracted' means something short of permanent but more than of short duration." [*State v.*] *Ross*, 939 S.W.2d [15,] 18 [(Mo.App.S.D.1997)]. There is not a minimum degree of trauma which must be inflicted to satisfy the statutory definition of protracted loss or impairment. *Id.* "Whether an injury constitutes protracted impairment depends on the circumstances of each case." *Id. State v. Lanier*, 985 S.W.2d 377, 379 (Mo. App. E.D.1999). In this case, Ms. Bruce recklessly cut Ms. Hudson with a knife four times. Ms. Hudson's wounds required several stitches, and, thereafter, she had to have surgery to repair the damage the knife had caused to the tendons and nerves in her hand. Her hand was immobilized in a cast for approximately one to two months, and she was unable to continue to work as a beautician for approximately five months after the incident. She had little to no feeling in her hand for almost four months. At the time of trial, nearly seven months after the incident, Ms. Hudson was still attending physical therapy. She still had not regained all of the feeling in or the full use of her hand. We hold that this evidence sufficiently supports the jury's finding that Ms. Bruce recklessly caused "protracted loss or impairment of the function of [Ms. Hudson's hand]." § 565.060.1(3). *See, e.g., State v. Ross*, 939 S.W.2d 15, 18-19 (Mo. App. S.D.1997) (holding that "seven days without the use of a leg or foot was sufficient to constitute protracted impairment," thus supporting a finding of "serious physical injury" under § 565.060.1(3)). In arriving at this holding, the court noted that neither of Ross' victims could walk without the aid of crutches for one week and required several follow-up doctor visits, and one victim could not resume his normal

---

**3.** In his dissent, Judge Smith of the Eastern District discussed whether the scars sustained by the victims constituted a "serious disfigurement."

activities for approximately one month after the incident.

Point I is denied.

## Point II—Instructing on Lesser Included Offenses

In her second point on appeal, Ms. Bruce argues that the trial court erred in declining to instruct the jury on assault in the third degree for Count I. She asserts that "any action of [Ms. Bruce] in this case would demonstrate, at best, recklessly engaging in conduct which creates a grave risk of serious physical injury."

Trial courts are not obligated to instruct on lesser included offenses unless there is a basis for the jury to: 1) acquit the defendant of the offense charged, and 2) convict the defendant of the included offense. If in doubt, the trial judge should instruct on the lesser included offense.

*State v. Hibler*, 5 S.W.3d 147, 148 (Mo. banc 1999) (citations omitted). When a defendant argues that the trial court erred in failing to instruct on a lesser offense, we review the evidence in a light most favorable to *defendant* to determine whether a basis existed to support the lesser included offense instruction. *State v. Craig*, 33 S.W.3d 597, 601 (Mo.App. E.D.2000) (emphasis added).

Ms. Bruce was charged in Count I with assault in the first degree on Ms. Hudson. The trial court instructed the jury on both first and second degree assault. At the instruction conference, Ms. Bruce submitted a proposed instruction on the lesser included offense of third degree assault. Her proposed instruction read in pertinent part:

As to Count I, if you do not find the defendant guilty of assault in the first

degree ... or assault in the second degree ... you must consider whether she is guilty of assault in the third degree as submitted in this instruction.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

1) That on or about August 11, 1999, ... the defendant recklessly caused physical injury to Denise Hudson by cutting her with a knife, and

2) That defendant did not act in lawful self defense as submitted in Instruction No. ___,

Then you will find the defendant guilty under Count I of the Class A Misdemeanor of assault in the third degree.

This proposed instruction also included § 562.016.4's definition of "recklessly," *supra*. It varied from the instruction given for second degree assault only in that the word "serious" did not precede "physical injury." [4] Thus, the degree of injury inflicted by Ms. Bruce is the distinguishing factor between the two degrees of assault at issue in the instant case. In the words of the trial court, "[third degree assault was] a lesser included on Count I, which would have the jury finding physical injury to Denise Hudson rather than serious physical injury." The trial court refused the instruction "because it [was] the Court's belief that there was not sufficient evidence to support a submission on physical injury without the word serious." In other words, the trial court found that there was no basis for a verdict acquitting Ms. Bruce of second degree assault and convicting on third degree assault. Thus, it was not obligated to instruct on third degree assault.

Ms. Bruce relies on the Missouri Supreme Court's recent *Hibler* case in sup-

---

**4.** Section 556.061(20) defines "physical injury" as "physical pain, illness, or any impairment of physical condition."

port of her argument that the trial court can only look to the *offense charged* in determining whether to instruct on a lesser included offense. 5 S.W.3d at 147. She asserts that under *Hibler*, the trial court erred in refusing to instruct on third degree assault because the evidence would support an acquittal on the *charged offense* (first degree assault) and would support a conviction of the proposed offense of third degree assault.

Theoretically, the majority's opinion in *Hibler* supports Ms. Bruce's argument that, as Judge Limbaugh states in his concurring opinion, "no comparison need be made between the evidence supporting submission of the second degree assault charge and that supporting submission of third degree assault because second degree assault was not 'the offense charged' under section 556.046.2." *Id.* at 152.

However, in response to this argument, upon a closer reading of the majority's opinion, we find that the majority's opinion reiterates that:

> In implementing [Section 556.046.2 [5]] as a practical matter, *the serial approach to instructing a jury is logical and should continue to be followed.* If there is a basis for acquittal of the offense charged, it is indeed logical to instruct on any lesser included offenses in descending order to determine whether there is a basis for conviction. *Once the court determines that a basis for conviction on a lesser included offense exists and that there is no basis to convict of a (lower) lesser included offense, it is fair to stop the inquiry.*

*Id.* at 151 (emphasis added) (citing "Notes on Use," paragraph 3b to MAI-CR3d 304.02, which reads in pertinent part, "[i]f you do not find the defendant guilty of [name of offense from immediately higher verdict director] as submitted in Instruction No. __, you must consider whether he is guilty of [name of offense from the lesser verdict director] under this instruction ...").  The supreme court's reiteration of this "serial approach" to instructing on lesser included offenses and its adoption of the "Notes on Use" to MAI–CR3d suggests to this court that, as a practical matter, the "stair-step" analysis for lesser included offenses remains viable.

In addition, the facts of *Hibler* can be distinguished from those now before us. Unlike in *Hibler*, in our case there is no basis to acquit Ms. Bruce of second degree assault and convict her of third degree assault.  Indeed, Ms. Bruce was not required to put on affirmative evidence as to the lack of seriousness of Ms. Hudson's physical injury.  *See State v. Santillan,* 948 S.W.2d 574, 576 (Mo. banc 1997) (holding that a defendant is not required to put on affirmative evidence as to the lack of an essential element of the higher offense to be entitled to a lesser included offense instruction).  If a reasonable juror could draw inferences from the evidence presented that Ms. Bruce did not inflict *serious* physical injury on Ms. Hudson, the trial court should have instructed down.

---

**5.** Section 556.046, titled "Conviction of included offenses," reads:

1.  A defendant may be convicted of an offense included in an offense charged in the indictment or information.  An offense is so included when

(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(2) It is specifically denominated by statute as a lesser degree of the offense charged; or

(3) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein.

2.  The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

*See id.* However, even viewing the evidence in a light most favorable to Ms. Bruce, it is clear that Ms. Hudson suffered a *"serious* physical injury." The jury could not have inferred that Ms. Hudson's injury was merely physical and not serious so as to acquit Ms. Bruce of second degree assault and convict her of third degree assault. Therefore, the trial court's refusal of Ms. Bruce's proposed third degree assault instruction was not in error.

Point II is denied.

## Conclusion

The evidence sufficiently established Ms. Bruce's guilt on assault in the second degree against Denise Hudson, and the trial court did not err in refusing to instruct the jury on the lesser included offense of third degree assault. Thus, we affirm the trial court's judgment.

EDWIN H. SMITH, P.J., and SMART, J., concur.