STATE of Missouri, Respondent,

v.

Anthony D. SIMPSON, Appellant.

No. WD 70208.

Missouri Court of Appeals,
Western District.

July 27, 2010.

Ruth Sanders, Kansas City, MO, for appellant.

Shaun J. Mackelprang and Robert J. (Jeff) Bartholomew, Jefferson City, MO, for respondent.

Before Division One: JAMES M. SMART, JR., Presiding Judge, MARK PFEIFFER, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Anthony Simpson appeals from the trial court's judgment finding him guilty of voluntary manslaughter and armed criminal action after a jury trial. Simpson alleges that the trial court erred in denying· his motion for judgment of acquittal at the close of all the evidence. Simpson alleges there was insufficient evidence from which a reasonable jury could have found Simpson guilty of voluntary manslaughter in that a reasonable jury could not have found that Simpson acted under the influence of sudden passion arising from adequate cause. Since the jury acquitted Simpson of murder in the second degree, and since, according to Simpson, the evidence could not have supported a finding of sudden passion arising from adequate cause, Simpson argues that the only supportable verdict was acceptance of his defense of self-defense. Simpson thus argues that his conviction must be vacated. We affirm.

**Factual and Procedural History**

Although we consider the evidence and inferences in the light most favorable to the verdict disregarding all contrary evidence and inferences,[1] the jury's verdict could be supported by alternative views of the conflicting evidence that was presented. As such, we provide a summary of the testimony regarding the events leading up to Marcus Henson being shot and killed by Simpson on July 24, 2006.

Vincent Gipson, Simpson's cousin, testified that he received a phone call from Simpson on July 24, 2006. Simpson told Gipson that he and a friend, Alicia Adams, had been robbed the night before. Simpson wanted a ride to go pick up Adams's car which was taken during the robbery. Following the robbery, Simpson and Adams had seen Adams's car, and thus knew where it was located. Gipson picked up Simpson and Adams and took them to Adams's car. Both Simpson and Gipson were carrying guns.

Gipson testified that they saw Henson, Edward Green, and Tyree Winters walking away from Adams's car. Adams identified one of the three men as the person who had taken her car keys during the robbery the night before. Gipson testified that as they were exiting his vehicle to approach the men, one of the men, Henson, pulled out a gun. Simpson and Gipson demanded the keys from the three men. Simpson and Gipson "jumped" Henson. Simpson had a gun in his hand at this time. Henson dropped his gun. Simpson and Gipson proceeded to beat up Henson. Henson fought back by kicking and punching.

Gipson testified that when the fight started, Winters ran off down the street. Green stood back and watched the fight. During the fight, Green told Simpson and Gipson that Winters (not Henson) had Adams's keys. Gipson and Green left to

---

1. *State v. Duff,* 281 S.W.3d 320, 325 (Mo.App. W.D.2009).

find Winters while Simpson and Henson kept fighting.

Gipson testified that while they were looking for Winters, he heard gunshots, so he ran around the corner back toward his vehicle. He saw Simpson running to the car. He saw Henson running in the opposite direction. Gipson got in his car and drove off with Simpson and Adams.

Green testified that when Simpson and Gipson pulled up, Green had been heading to Marquan Wilson's house. Green stated that he was standing on the sidewalk when Simpson and Gipson got out of their vehicle carrying handguns. Green testified that he stood back as Gipson and Simpson fought with Henson. Green testified that he and Gipson then went looking for Winters and the keys. Green stated that he and Gipson soon returned to the scene of the fight and that Simpson then let Henson go. Green and Henson met up in the middle of the street and started running down the street away from Simpson. Green heard two gunshots. Green heard Henson exclaim that he was hit. Green testified that he turned and saw Simpson with his gun pointed at them. Green and Henson separated, running in different directions.

When Green heard Gipson's car leave the scene, he went to Wilson's house. Green testified that Wilson came outside with his own gun and threw it in the yard because the police had arrived. On direct examination, Green testified that he believed that Henson did not have a gun during the fight with Simpson. On cross-examination, however, Green testified that he had gone to McDonald's with Henson right before this incident and that Henson had a gun on his lap at the time.

Wilson's stepson, Marcus Heard, testified that he was inside his home when he looked out the window and saw a car pull up. Heard saw Simpson exit the passenger side of the vehicle and saw Simpson begin arguing with Henson. Heard stated that Simpson held a gun to Henson's head and ordered him to the ground and that Henson then ran. Heard said Henson tried to run across the street when Simpson fired shots toward Henson's back. Heard testified that he did not see Green, Winters, or anyone else at the scene. Heard stated he never saw Simpson and Henson fighting.

The defense called Winters who testified that on the evening of July 23, 2006, he was at the Welcome Inn with Henson, Green, and some other people. At some point, Henson left their first floor room. While Henson was gone, Winters heard screaming from the second floor. Henson returned and, without explanation, Winters, Green, and Henson got into a car that Winters knew was stolen. Henson had money and car keys that he did not have earlier in the evening. The three then went to McDonald's. Winters saw Henson with a gun during this time. At some point, Henson gave Winters the keys to the stolen car. Winters stated that when Gipson, Simpson, and Adams drove up, Henson had his gun out before Gipson and Simpson got out of Gipson's vehicle. When Gipson and Simpson emerged from Gipson's vehicle, Winters ran off.

Simpson testified that on July 24, 2006, at approximately 3:00 a.m., Simpson and Adams were in a second floor room at the Welcome Inn when Henson knocked on the door. When Simpson opened the door, Henson rushed in, along with Green and several others. Henson smacked Simpson in the face with a gun and demanded money. Simpson fell to the floor, and the others started beating him up. While being robbed, Henson held Simpson down on the ground, hitting him in the head with his gun. The group took Adams's car keys and Simpson's clothes, phone, and money.

Simpson and Adams got a ride home from a friend. On their way home, they spotted Adams's vehicle exiting a McDonald's. They trailed the car to 28th Street before proceeding home. Later that morning, Gipson gave Simpson and Adams a ride to retrieve Adams's vehicle. They saw three men near Adams's vehicle. Simpson recognized Henson, who already has his gun out, as the one who had robbed him. Gipson exited his vehicle with his gun drawn, yelling at the three men to drop their guns. Simpson also exited Gipson's vehicle with his gun. According to Simpson, Henson immediately dropped his gun, and Simpson put his own gun into his pocket. Simpson ran over to Henson, demanding the property that had been stolen, including the car keys. A fight began. Both Henson and Green start yelling that Winters had the stolen keys. Green and Gipson ran off to look for Winters.

Simpson testified that he eventually stopped fighting with Henson and let Henson go because he realized that Henson did not have the car keys. Simpson stated that as Henson was walking off, Simpson told him not to pick up his gun. Henson picked up his gun, pointed it at Simpson, and said, "Fuck you, you ain't getting your shit." Simpson stated that he shot Henson twice because he thought Henson was going to shoot him. Simpson stated that it happened so fast that he did not even aim. Simpson got back in the passenger seat of Gipson's car and saw Henson running down the street. Simpson did not know if he had shot Henson. Simpson testified that he had no intention of shooting Henson when he, Gipson, and Adams set out to retrieve Adams's car.

Henson's body was found by police in the backyard of a nearby house. Dr. Miguel Laboy testified that Henson died from a bullet wound that entered the left side of his back and exited the right side of his chest. He had also been shot in his left leg and had several abrasions on his lip, face, and knee.

Simpson was charged with murder in the second degree and armed criminal action. During the instruction conference at the jury trial, the State proposed instructions and verdict directors for both murder in the second degree and voluntary manslaughter. Simpson did not object to the voluntary manslaughter instruction. The jury was also instructed on self-defense. Neither the State nor Simpson argued for voluntary manslaughter during closing argument. The State argued that the evidence supported a conviction for second degree murder. Simpson argued that the evidenced supported an acquittal based on self-defense.

During deliberations, the jury asked several questions, including whether they could convict of armed criminal action without convicting of either second degree murder or voluntary manslaughter. The jury questioned what would happen if they could not reach a verdict, and twice reported they were hung at 7–5. Continued deliberations were encouraged, and the jury ultimately found Simpson guilty of voluntary manslaughter and armed criminal action. Simpson was sentenced to concurrent terms of twenty years imprisonment for each count. Simpson appeals.

### Standard of Review

■■■ Our role is limited to determining whether the State presented substantial evidence from which a trier of fact could have reasonably found Simpson guilty of voluntary manslaughter beyond a reasonable doubt. *State v. Duff*, 281 S.W.3d 320, 325 (Mo.App. W.D.2009). "We consider the evidence and inferences in the light most favorable to the verdict, disregarding all contrary evidence and inferences." *Id.* Circumstantial evidence by

itself can be sufficient to support a conviction. *State v. Robertson,* 262 S.W.3d 285, 288 (Mo.App. W.D.2008). " 'Substantial evidence is evidence from which a juror could reasonably find the issue in harmony with the verdict.' " *State v. Bruce,* 53 S.W.3d 195, 198 (Mo.App. W.D.2001) (citation omitted). " 'Where different inferences are reasonably deducible from the facts and circumstances of the case, it is for the triers of fact to determine which inference shall be drawn and [this court] may not cast aside their inferences for another of its own choice.' " *State v. Butler,* 24 S.W.3d 21, 27 (Mo.App. W.D.2000) (citation omitted). This court "does not determine credibility of witnesses, resolve conflicts in testimony, or weigh evidence, as these tasks are quite properly left to the jury." *Id.*

### Analysis

■ For his sole point on appeal, Simpson alleges that the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence because there was insufficient evidence to support a conviction of voluntary manslaughter in that a reasonable jury could not have found beyond a reasonable doubt that Simpson acted under the influence of sudden passion arising from adequate cause. Simpson contends that the evidence established that either he was guilty of murder in the second degree or that he acted in self-defense and was guilty of nothing at all. Since the jury acquitted Simpson of murder in the second degree, and since (according to Simpson), the jury could not have found him guilty of voluntary manslaughter, Simpson argues that the evidence could only be viewed to support that he acted in self-defense. Simpson thus argues that his convictions must be vacated. We disagree.

"A person commits the crime of murder in the second degree if he knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person[.]" Section 565.021.1(1).[2] Section 565.023(1) provides that "[a] person commits the crime of voluntary manslaughter if he [c]auses the death of another person under circumstances that would constitute murder in the second degree ... except that he caused the death under the influence of sudden passion arising from adequate cause."

■ Sudden passion is defined as "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation." Section 565.002(7). Adequate cause is "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." Section 565.002(1). Adequate cause requires a showing of "a sudden, unexpected encounter or provocation tending to excite the passion beyond control such that it renders a person of ordinary temperament incapable of reflection, or such passion as to obscure reason." *State v. Price,* 928 S.W.2d 429, 431 (Mo.App. W.D.1996). Passion, whether rage, anger, or terror, must be so extreme that for the moment, the conduct is driven by passion, not reason. *Id.* It is not sudden passion where there has been time for the passion to cool. *Id.*

Simpson argues that the testimony presented to the jury simply could not have supported a finding of sudden passion arising from adequate cause. Simpson argues

---

that he and Henson had stopped fighting and that Henson was leaving the scene, such that any passion that existed during the fight had "cooled." Though, according to Simpson, Henson did yell back at him while leaving the scene, Simpson points out that words alone cannot support a finding of "sudden passion." *State v. Redmond*, 937 S.W.2d 205, 208 (Mo. banc 1996). Simpson then argues that since the jury acquitted him of second degree murder, the jury must have believed that Henson pulled a gun on him when leaving the scene. Otherwise, according to Simpson, the jury would have found him guilty of second degree murder for shooting an unarmed man. Finally, Simpson argues that as the jury "must have believed" that Henson pulled a gun on him, the evidence could only have supported a finding of self-defense. Simpson's logic, albeit creative, is flawed.

Simpson's logic relies heavily on the fact that the jury acquitted him of second degree murder but ignores that the jury also expressly rejected his defense of self-defense. The verdict director for voluntary manslaughter included the standard "affirmative defense tail," advising the jury it had to conclude, in order to convict Simpson of voluntary manslaughter, that "defendant did not act in lawful self-defense as submitted in instruction No. 9." If, as Simpson requests, we are to afford inscrutable respect to the jury's determination that Simpson was not guilty of second degree murder, we must afford the same respect to the jury's express rejection of Simpson's defense of self-defense. Thus, the sole and only question before us is whether, notwithstanding Simpson's contention to the contrary, the evidence, and the inferences drawn from the evidence, support a conclusion that Simpson shot Henson under the influence of sudden passion arising from adequate cause. We conclude that the evidence, viewed in the light most favorable to the verdict, does support this conclusion.

The Supreme Court addressed a similar situation in *State v. Fears*, 803 S.W.2d 605 (Mo. banc 1991). Fears engaged in a heated argument with the victim resulting in Fears hitting the victim, the victim hitting his head on the ground, and the victim dying as a result of a fracture to the back of his skull. *Id.* at 607. Fears was charged with second degree murder but convicted of voluntary manslaughter. *Id.* at 606. Fears claimed that there was insufficient evidence to support the verdict. *Id.* at 608. The Supreme Court found that the record refuted Fears's claim, noting the escalation included waving fingers at each other, calling Fears's children liars, calling the victim a liar, the victim swinging at Fears, and then Fears counter punching the victim. *Id.* at 608–09. The court noted that although the record supported that Fears possessed a prior intent to cause injury to the victim, the record also supported that the victim's provocation of Fears resulted in Fears's reactional striking of the victim. *Id.* at 609. The Supreme Court concluded that there was sufficient evidence to acquit Fears of murder in the second degree and to convict him of voluntary manslaughter based on the *aggregate* of insulting words, offensive gestures, and physical contacts that were sufficient to put Fears in fear of serious bodily harm, within a time span insufficient for Fears's anger to cool, and sufficient for reasonable persons to find that Fears acted out of sudden passion. *Id.*

Similarly, the jury heard evidence of the escalating activity that led to Simpson shooting Henson. Simpson testified about being attacked by an armed Henson at the motel and the theft of Adams's vehicle. Simpson testified regarding the confrontation during efforts to recover the stolen vehicle including: Henson pulling a gun,

the physical fight between Henson and Simpson, his letting Henson go, Henson starting to walk away, Simpson telling Henson not to pick up his gun, Henson picking up his gun and pointing it at Simpson, and Henson's statement "Fuck you, you ain't getting your shit." Simpson testified that he then shot Henson, clearly a reactional decision.

Notwithstanding Simpson's characterization to the contrary, these facts aggregate to show more than just an exchange of words. As in *Fears*, the aggregate of the prior assault, the insulting words, the offensive gestures, and the physical fight were sufficient for a reasonable person to have concluded that Simpson shot Henson under sudden passion from adequate cause with insufficient time for his anger to cool. As in *Fears*, it is immaterial that the evidence in this case may have supported a different determination if the evidence, when viewed in the light most favorable to the verdict, supports that Simpson acted with sudden passion.

 The fact that the jury heard testimony which conflicted with Simpson's testimony does not affect our analysis. The jury was free to accept or reject any of the testimony it heard. *Redmond*, 937 S.W.2d at 209. Specifically, the jury did not have to believe that the end of the fight and Simpson's "release" of Henson supported the conclusion that Simpson's sudden passion had cooled. Moreover, Simpson's assertion that his acquittal on the charge of second degree murder necessarily meant the jury believed that Henson pulled a gun on Simpson is without merit. The jury could just as easily have concluded that Simpson saw, or thought he saw, Henson pull a gun but that Simpson did not act in a manner consistent with the legal standard sufficient to support a conclusion of self-defense.[3] Or the jury could have believed that Henson did not have a gun and that the aggregate of the circumstances still warranted a conclusion that Simpson shot Henson out of sudden passion, even though the physical fight between the men had just ended.

In the end, notwithstanding Simpson's attempt to distinguish his case given his assertion of the defense of self-defense, Simpson's position on appeal falls squarely within the scope of section 545.030.1(17), which provides that no judgment shall be affected "[b]ecause the evidence shows or tends to show [a defendant] guilty of a higher degree of the offense than that of which he is convicted." Simpson's case is not distinguishable from *State v. Cox*, 508 S.W.2d 716, 724 n. 4 (Mo.App.1974), or *State v. Lewis*, 955 S.W.2d 563, 565–66 (Mo.App. W.D.1997), both of which conclude that section 545.030.1(17) validates a

---

3. Notably, Simpson ignores in his brief any discussion of the elements of the lawful defense of self-defense as instructed in Instruction No. 9, and he improvidently presumes that the mere fact that Simpson thought he saw Henson with a gun would have required the jury to acquit Simpson as a matter of law. A defendant is only entitled to acquittal as a matter of law when the evidence establishing self-defense is undisputed and uncontradicted. *State v. Christie*, 604 S.W.2d 806, 808 (Mo.App. W.D.1980). "Where there is conflicting evidence, or when different inferences can reasonably be drawn from the evidence, it is a question of fact for the jury whether the defendant acted in self-defense." *State v. Allison*, 845 S.W.2d 642, 646 (Mo.App. W.D. 1992). Whether or not the jury believed Henson had a gun, the jury was not obliged to conclude on this contradictory record that Simpson, the initial aggressor, withdrew from the encounter with Henson, and it was not obliged to conclude that Simpson reasonably believed he was in imminent danger of harm from Henson. *Redmond*, 937 S.W.2d at 209. Nor was the jury obliged to conclude, even if Simpson reasonably believed he was in imminent danger, that Simpson used force necessary to protect himself.

conviction for voluntary manslaughter even though the evidence may have supported conviction for a higher degree of homicide.

Sufficient evidence was presented from which the jury could find Simpson acted under the influence of sudden passion arising from adequate cause to support his conviction of voluntary manslaughter. The trial court did not err in denying Simpson's motion for acquittal at the close of all the evidence.

## Conclusion

We affirm the trial court's judgment.

All concur.