STATE of Missouri, Respondent,

v.

Benson LEWIS, Appellant.

No. WD 53262.

Missouri Court of Appeals,
Western District.

Sept. 30, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 1997.

Patrick O'Brien, Lee's Summit, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Blegen, Asst. Atty. Gen., Jefferson City, for Respondent.

SPINDEN, Judge.

Benson Lewis appeals the circuit court's judgment convicting him of two counts of voluntary manslaughter and two counts of armed criminal action. He contends that the circuit court erred in overruling his motion for judgment of acquittal at the close of the evidence and his motion for new trial because the state failed to meet its burden of establishing all the essential elements of voluntary manslaughter. He also contends that the circuit court committed plain error by submitting the voluntary manslaughter instruction to the jury without requiring a finding of "under the influence of sudden passion arising from adequate cause." Finally, he asserts that the circuit court abused its discretion by sending almost all the trial exhibits to the jury room even though the jury only requested to see a few of the exhibits. We affirm the judgments of conviction.

The state's evidence established that during the early morning hours of February 20, 1995, Benson Lewis saw four men in a car in the parking lot of the apartment complex in which he lived. The four men—Maurice Sayles, Ramone Brock, Robert Dobbs and Dornell Lewis—were looking for a car to steal. Sayles, Brock, and Dornell Lewis got out of their car. Sayles and Brock walked to Benson Lewis' car while Dornell Lewis watched as a look-out. Sayles hit a window of Benson Lewis' car with his fist.

At that point, Benson Lewis ran out of his apartment with a gun and fired a shot. Sayles and Brock ran into a field across the street from the apartment complex. Dornell Lewis jumped in the car with Dobbs. Benson Lewis ran up to the car and shot Dobbs and Dornell Lewis multiple times, emptying the clip of his 9-millimeter, semi-automatic pistol. Five bullets wounded Dornell Lewis, and 14 bullets wounded Dobbs. Both died.

Benson Lewis testified that he "was mad like anybody else would be" when he saw the men trying to steal his car. He said that he grabbed his gun, cocked it, went outside and told Sayles to get away from his car. He said that he "heard a pow like a gunshot" and that he slid down a few steps and fired his gun without aiming. He then ran toward the parking lot to get a look at the men who were running from him. He said that Dornell Lewis' and Dobbs' car moved towards him rather than moving toward a parking lot exit. He said that he thought they were trying to kill him because someone in the car said, "Hey, nigger," so he started shooting at the car and kept firing. He could not remember how close he got to the car, but he said that he fired his gun until it was empty. He then ran to his apartment and telephoned authorities.

■ In his first point, Lewis contends that the circuit court erred in overruling his motion for judgment of acquittal at the close of the evidence and his motion for new trial because the state did not meet its burden of establishing all the essential elements of voluntary manslaughter. He asserts that the court erred in submitting the voluntary manslaughter theory to the jury because, con-

trary to the requirements of § 565.023, RSMo 1994, he did not inject the issue of "sudden passion" into the case. He asserts in the alternative that the state's evidence did not establish that he acted under the influence of sudden passion arising from adequate cause.

Concerning the issue of "sudden passion," Lewis argues, "By charging a defendant from the outset with voluntary manslaughter as the highest degree of homicide charged, it appears that the State is taking the chance that defendant may never inject this issue of sudden passion, in which case the State would never be able to prove voluntary manslaughter." We disagree.

Section 565.023 says:

1. A person commits the crime of voluntary manslaughter if he:

(1) Causes the death of another person under circumstances that would constitute murder in the second degree under subdivision (1) of subsection 1 of section 565.021, except that he caused the death under the influence of sudden passion arising from adequate cause[.]

. . . .

2. The defendant shall have the burden of injecting the issue of influence of sudden passion arising from adequate cause under subdivision (1) of subsection 1 of this section.

█ We presume that the General Assembly did not intend an absurd result from its statutory mandates, and we interpret its statutes accordingly. *State v. Chamberlin*, 872 S.W.2d 615, 617 (Mo.App.1994). Reading § 565.023.2 in the manner urged by Lewis leads to an absurdity: that a defendant can block the state's prosecuting him or her for voluntary manslaughter by refusing to inject the issue of sudden passion. A more sound reading of the statute is that the General Assembly intended to require a defendant's injection of the sudden passion issue only in cases in which the state has charged a defendant with second degree murder and the defendant wants to submit a voluntary manslaughter instruction.

The Notes on Use for MACH–CR 13.08 recognizes that the state may charge the defendant with voluntary manslaughter when "the state will not contest the existence of sudden passion." *Id.* at n.2. The Notes on Use for MAI–CR3d 313.08, n.4, also say:

It is possible to submit voluntary manslaughter as the highest degree of homicide submitted and not as a lesser included offense. Such situations may be rare, but may arise where the state wishes to prosecute the homicide as a knowing killing or with purpose to cause serious physical injury but does not wish to contest the existence of sudden passion arising from adequate cause. The state may charge voluntary manslaughter rather than murder in the second degree—conventional.

Lewis' contention is without merit.

█ In the alternative, Lewis contends that if it was not necessary for him to inject the issue of sudden passion into the case, then the state presented insufficient evidence to prove sudden passion beyond a reasonable doubt. This court faced a similar argument in *State v. Gaston*, 897 S.W.2d 136, 137–38 (Mo.App.1995), in which we said:

Appellant argues that the evidence presented at trial: (1) fails to prove sudden passion; and (2) fails to prove he shot [the victim] with the purpose of causing death or serious bodily injury.

The problem with this argument is that Appellant is now claiming that the evidence adduced at trial showed he committed a higher offense than that for which he was convicted, voluntary manslaughter. If Appellant's point is taken literally, he is saying he is more likely guilty of second degree murder rather than voluntary manslaughter, because of the absence of the "sudden passion & adequate cause" elements.

Appellant's claim must fail, due to a "defendant's protection" statute, which precludes the state from charging defendant with a greater crime if the evidence supports the guilt, but the defendant is on trial for a lesser offense. § 545.030.1(17) RSMo 1986. More specifically, the statute provides that no criminal trial may be in any manner affected because the evidence shows the defendant to be guilty of a high-

er degree of the offense for which he was convicted. *Id.* In applying § 545.030.1(17) to this case, the fact that the evidence may show Appellant to be guilty of a higher degree of homicide than that for which he was convicted, will not affect the outcome of the trial on the lesser charge.

Lewis does not contest that without the sudden passion element the evidence would tend to establish his guilt of second degree murder, so, pursuant to § 545.030.1(17), RSMo 1994, his contention is without merit.

In his second point, Lewis asserts that the circuit court committed plain error by submitting the voluntary manslaughter instructions to the jury because they did not require the jury to find that he was "under the influence of sudden passion arising from adequate cause." Lewis admits that he did not object to the jury instructions; therefore, he did not preserve the issue for our review. This means that if we review the issue we must do so as plain error pursuant to Rule 30.20. We decline to review the matter.

"[U]nless a claim of plain error *facially establishes* substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted,' this Court will decline to exercise its discretion to review for plain error under Rule 30.20." *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc)(quoting Rule 30.20)(emphasis added), *cert. denied*, —— U.S. ——, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). The circuit court patterned its instructions in this case after MAI–CR3d 313.08 and followed the applicable Notes on Use. An instruction in the format of MAI–CR3d simply does not facially establish substantial grounds for believing that manifest injustice has occurred. *See State v. Mallory*, 851 S.W.2d 46, 48 (Mo.App. 1993).[1]

In his final point, Lewis contends that the circuit court abused its discretion by sending almost all of the trial exhibits to the jury room even though the jury requested only a few of them. During deliberations,

the jury sent a note to the judge asking, "May we see the charts, copy of 911 transcripts, see video of Benson Lewis' statement?" The circuit court responded by sending them all of the exhibits except for the weapons and the testimonial exhibits. Lewis objected only to the circuit court's sending the sweatshirt that one of the victims was wearing, so, nearly all of the point is not preserved for our review and must be reviewed, if at all, as plain error.

But for the sweatshirt, we would decline to review the issue. Decisions of what exhibits to give a jury during deliberations is within the circuit court's sound discretion. *State v. Jennings*, 815 S.W.2d 434, 440 (Mo.App.1991). As such, they can be the basis for plain error review in only the rarest of cases, of which this is not one. Because we review the preserved issue of sending the sweatshirt to the jury, however, we, in effect, review Lewis' point as to the other exhibits.

Lewis' complaint is sound only if the circuit court abused its discretion in sending all of the evidence, particularly the sweatshirt, to the jury. To constitute an abuse of discretion, the circuit court's action must have been untenable, clearly against reason and result in an injustice. *Id.* We do not discern a basis for concluding that the circuit court abused its discretion. Its sending all of the exhibits was not, in effect, a comment on the evidence, as Benson Lewis suggests. We deny his point.

We affirm the circuit court's judgment.

ULRICH, C.J., P.J., and HANNA, J., concur.

---

**1.** In State v. Carson, 941 S.W.2d 518, 520 (1997), the Missouri Supreme Court held that "[i]f an instruction following MAI–CR3d conflicts with substantive law, [courts] should decline to follow MAI–CR3d or its Notes on Use." The Carson case, however, did not concern plain error review of MAI–CR3d instructions.