SHERRI B. SULLIVAN, P.J.
Introduction
Brandon K. Kulhanek (Appellant) appeals the judgment denying his motion for post-conviction relief under Rule 24.035[1] without an evidentiary hearing. Appellant argues he alleges facts in his motion, not refuted by the record, that establish his guilty plea was made unknowingly and involuntarily. Appellant also claims ineffective assistance of trial counsel at his sentencing hearing. We affirm in part and reverse in part, and remand to the motion court for an evidentiary hearing on Appellant's first point on appeal.
Background
Pursuant to a plea agreement with the State, Appellant pled guilty to one count of second-degree murder. Following a sentencing hearing, Appellant was sentenced to life imprisonment, to be served consecutive to a term of imprisonment Appellant was already serving for an unrelated offense.
Appellant was charged with first-degree murder and committing violence against an offender following an incident that occurred between him and his cellmate, Daniel Wilson (Victim), while they were incarcerated together in the Missouri Department of Corrections. During Appellant's guilty plea, he admitted to, on October 14, 2015, striking and strangling Victim in their shared cell, killing him. Appellant stated the reason for the fight was his learning the true reason for Victim's incarceration, which was causing the death of Victim's own child.
Appellant lays out a more detailed account of the incident in his amended Rule 24.035 motion. Appellant states when they first met, Victim was given to boasting about the offense for which he was incarcerated. Victim originally told Appellant he was incarcerated for killing a man with his bare hands after he attempted to assault Victim's wife.
On the day in question, Appellant learned Victim was not being truthful about the offense for which he was incarcerated. Appellant confronted Victim in their cell, demanding he admit to the truth. Victim became defensive, and the two argued. Appellant claims Victim swung at him and Appellant hit back. As they traded blows, Victim rushed Appellant as if to apply "a lethal bear hug"; Appellant continued to fight back, supposedly now in fear for his life. Appellant ultimately gained the upper hand, punching Victim unconscious. As Victim lay unconscious, Appellant stomped on Victim's throat several times and strangled him with his hands. Victim died as a result.
Appellant was originally charged with two counts: Count I, first-degree murder, and Count II, committing violence against an offender. The State agreed to drop the *98 second count and reduce the first count to second-degree murder in exchange for Appellant's guilty plea. The State also agreed not to file two other cases pending against Appellant.
On January 9, 2017, Appellant pled guilty to second-degree murder in the Washington County Circuit Court. Pursuant to the plea agreement, the State recommended a sentence of life imprisonment. The decision whether that sentence would be served concurrent or consecutive with his existing term of incarceration was to be left with the trial court.
Later that day, the court held a sentencing hearing to determine whether his sentence would be imposed concurrently or consecutively. Appellant waived his right to a sentencing assessment report. The State recommended Appellant receive a term of life imprisonment to be served consecutively with his existing sentence. In support, the State discussed Appellant's alleged participation in a prison gang, reputed to target other inmates convicted of offenses against children and women. The State argued Appellant's affiliation with this gang was a substantial motive for his killing Victim, and that Appellant was proud and unremorseful for his actions. To back these claims, the State read from a letter purportedly authored by Appellant after he killed Victim in which he boasted about the killing, disclaimed any remorse, and stated a desire to commit future killings. The State did not call any witnesses to authenticate the letter as having been authored by Appellant. Instead, the State claimed the letter had been confiscated from another inmate who identified Appellant as its source, was signed with Appellant's prison nickname, and was written in handwriting identical to other letters known to have been written by Appellant. An excerpt from the letter was read to the court with no objection from Appellant or Appellant's trial counsel (trial counsel). However, trial counsel argued, given the State's failure to lay foundation for the letter's admission, the court should not consider the letter when deciding Appellant's sentence.
Before accepting Appellant's guilty plea, the court questioned Appellant about his legal representation. Appellant stated he understood the charges and had ample time to discuss his case with trial counsel; trial counsel investigated the case to Appellant's full satisfaction; and trial counsel had not refused to do anything Appellant asked of him. Appellant stated all defenses available to the charge had been discussed with and explained to him by trial counsel. Appellant stated he was fully satisfied with his representation and had no complaints whatsoever. Appellant was then read each element of the charge and admitted to each of them.
The court accepted Appellant's plea of guilty and sentenced Appellant to life imprisonment, to be served consecutively with his existing term of incarceration. On May 9, 2017, Appellant filed a timely pro se motion to set aside his guilty plea. The motion court appointed counsel, who filed an amended motion on Appellant's behalf to set aside the guilty plea. In his motion, Appellant claims trial counsel's performance was deficient because he did not discuss possible defenses with Appellant, and did not object to the State's reading of the letter at the sentencing hearing; as a result, his guilty plea and resultant sentence should be set aside. Appellant requested an evidentiary hearing to establish the factual claims in his motion. The motion court denied Appellant's motion without a hearing. This appeal follows.
Points on Appeal
Appellant makes three points on appeal. In Point I, he claims the motion court erred in denying an evidentiary hearing *99 on his motion because he averred facts, not refuted by the record, establishing trial counsel was ineffective in that he failed to discuss with Appellant a viable trial defense that Appellant was guilty of the lesser included offense of voluntary manslaughter and, but for trial counsel's failure to do so, Appellant would have chosen to proceed to trial. Point II is identical, except Appellant claims trial counsel did not discuss with him a viable self-defense claim. In Point III, Appellant claims trial counsel was ineffective for failing to object to the State's reading from the letter purportedly authored by Appellant at his sentencing hearing.
Standard of Review
This Court's review of the motion court's ruling on a motion filed under Rule 24.035 is "limited to a determination of whether the findings and conclusions of law ... are clearly erroneous." Rule 24.035(k). The trial court's ruling is clearly erroneous when this Court is left with a "definite and firm impression that a mistake has been made." Worthington v. State, 166 S.W.3d 566, 572 (Mo. banc 2005).
"In order to obtain an evidentiary hearing on a claim of ineffective assistance of counsel under Rule 24.035, (1) a movant must raise facts, not conclusions, warranting relief; (2) the facts alleged must raise matters not refuted by the record; and (3) the matters complained of must have resulted in prejudice to the movant." Wiggins v. State, 480 S.W.3d 379, 382 (Mo. App. E.D. 2015). "To justify the denial of an evidentiary hearing, the record must be specific enough to conclusively refute the movant's allegation." Id.
Discussion
Point I
In his amended motion, Appellant claims trial counsel never investigated or advised him of the possibility of proceeding to trial with a defense theory that he was guilty of voluntary manslaughter, as a lesser included charge of first- and second-degree murder. Appellant claims he recounted the version of events found in his amended motion to trial counsel prior to pleading guilty, and those events would have constituted a colorable claim that he had committed voluntary manslaughter. Because he was not aware of the possibility of proceeding to trial with that defense, it renders his guilty plea unknowing and involuntary. He further claims, but for trial counsel's failure, he would not have pled guilty and would have proceeded to trial.
Because Appellant requests an evidentiary hearing under Rule 24.035 involving a claim of ineffective assistance of counsel, he must allege facts, unrefuted by the record, that show (1) trial counsel's performance fell below an objective standard of skill, care and diligence reasonably expected of a competent attorney, and (2) he was prejudiced by such failure. Webb v. State, 334 S.W.3d 126, 128 (Mo. banc 2011). In the context of a guilty plea, "prejudice" means, but for his counsel's deficient performance, there is a reasonable probability he would not have pled guilty and insisted upon a trial. Id. Failure by defense counsel to discuss a viable trial defense before a plea may constitute ineffective assistance of counsel. Wiggins, 480 S.W.3d at 383 ; see also Bequette v. State, 161 S.W.3d 905, 908 (Mo. App. E.D. 2005).
"Defense counsel has a duty to make a reasonable investigation or to make a reasonable decision that a particular investigation is unnecessary, and the decision to forego investigation must be evaluated for reasonableness under the circumstances, with great deference being *100 given to counsel's judgment." Crooks v. State, 131 S.W.3d 407, 410 (Mo. App. S.D. 2004). Appellant claims trial counsel never investigated or discussed with him a possible voluntary manslaughter defense. In order to determine whether this was reasonable, we must examine whether the facts as averred in Appellant's amended motion, where not refuted by the record, may have provided a basis for a voluntary manslaughter defense.
"Voluntary manslaughter is defined as causing the death of another person under circumstances that would constitute murder in the second degree, except that the death was caused under the influence of sudden passion arising from adequate cause." State v. Payne, 488 S.W.3d 161, 164 (Mo. App. E.D. 2016). It is a lesser included offense of first- and second-degree murder, and if a defendant injects the issue and the evidence supports a possible conviction on voluntary manslaughter, the trial court is obligated to offer the instruction to the jury. Id.; see also State v. Williams, 787 S.W.2d 308, 313 (Mo. App. E.D. 1990) ("If there is some evidence that defendant caused the death under the influence of sudden passion arising from adequate cause it is reversible error to fail to give a manslaughter instruction."). "Adequate cause" is defined as "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control"; "sudden passion" is defined as "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation." Section 565.002(1); Section 565.002(15).[2]
In his amended motion, Appellant asserts the facts that he claims to have provided trial counsel would have supported a voluntary manslaughter instruction. Specifically, he points to the heated argument he and Victim had immediately preceding their fight, and the fact that Victim instigated the physical confrontation by throwing a punch at Appellant. These facts, if offered at trial, may well form the basis of voluntary manslaughter. Several Missouri cases indicate that a heated argument, culminating in the victim assaulting the defendant, may constitute evidence of sudden passion upon adequate cause, necessitating a voluntary manslaughter instruction. See State v. Redmond, 937 S.W.2d 205, 208-09 (Mo. banc 1996) ; see also State v. Fears, 803 S.W.2d 605, 609 (Mo. banc 1991) ; State v. Arnel, 846 S.W.2d 245, 247 (Mo. App. E.D. 1993) ("A manslaughter instruction is typically justified when the victim perpetrates battery upon the defendant.").
The motion court did not hold the facts averred in Appellant's amended motion were insufficient to constitute a possible voluntary manslaughter claim. Rather, the motion court found Appellant's claims were refuted by the record, specifically by the statements he made at his guilty plea. The motion court held (1) Appellant's statements indicating he was satisfied with trial counsel, who had investigated and explained all possible defenses, refuted the claim in his amended motion he was not informed of a voluntary manslaughter defense; and (2) Appellant's admission to each element of second-degree murder, and his omission of any mention of Victim being the initial aggressor, refuted the factual basis of his voluntary manslaughter claim.
*101 We find the trial court clearly erred in both of these conclusions. As to the first, it is true that a defendant's claim that trial counsel has performed adequately and discussed all possible defenses has probative value when evaluating a later claim that a possible defense was not discussed. See Muhammad v. State, 367 S.W.3d 659, 663 (Mo. App. E.D. 2012). However, the court asking whether all defenses have been discussed, without any specific indication of what precisely those defenses are, cannot be dispositive of the issue. See Bequette, 161 S.W.3d at 908. A broadly phrased question concerning trial counsel's performance may not, in light of the rest of the record, be sufficient to defeat a later claim of ineffective assistance. State v. Driver, 912 S.W.2d 52, 56-57 (Mo. banc 1995). If Appellant was, as he claims, unaware of a voluntary manslaughter defense at the time he answered the motion court's question, then he may have answered truthfully and still not have been aware his answer was actually false. Denial of Appellant's motion without an evidentiary hearing cannot turn on a broad disclaimer of having discussed "all defenses"; rather, it turns on whether the record specifically refutes his claim that he was not aware of a possible voluntary manslaughter defense at the time he made his plea. Wiggins, 480 S.W.3d at 382. After examining the record, we conclude it does not.
This Court has held, unlike the concepts of self-defense and lesser included charges in general, voluntary manslaughter is a fairly complicated legal concept, such that it is not part of the general knowledge of people without a legal background. Id. at 385 ; see also Whitehead v. State, 481 S.W.3d 116, 125 (Mo. App. E.D. 2016) (record specifically refutes appellant's claim he was unaware of lesser included charge, where appellant pled guilty to that same charge in another count). It does not strain credulity that a layperson may be unaware of a possible voluntary manslaughter defense without advice from counsel, and we find nothing in the record to refute Appellant's claim he was unaware of it before pleading guilty.
We also conclude the motion court clearly erred in its second finding, that Appellant's statements during his guilty plea refuted the claims in the amended motion.
During the plea hearing, the court asked Appellant to state in his own words what happened during the commission of the offense. Appellant stated:
They put Mr. Wilson in the cell with me and initially he told me about the case that he was in prison for, which was something completely different than what I had found out later. Later he admitted to me that he was in there for killing a child, his own child, and which led to a fight in the cell.
The motion court found, because Appellant never mentioned Victim was the initial aggressor, the record contradicted his later claim that he was.
"[T]he factual basis underlying a guilty plea is not always a complete account of the circumstances surrounding the crime, nor is it meant to be." Wiggins, 480 S.W.3d at 384. Moreover, the motion court seems to have conflated the concept of omission with contradiction. It is possible to state a fight occurred without indicating who the initial aggressor was. This is exactly what Appellant did at his plea; he stated there was a disagreement which "led to a fight." He claimed later, in the amended motion, that Victim threw the first punch, initiating the physical portion of their confrontation. Those two statements are not contradictory; the latter merely adds detail omitted by the former. Thus, the record does not refute the claim in Appellant's amended motion.
*102 The trial court also noted Appellant was read every element of second-degree murder, and admitted to each, which also refuted his later claim he had actually committed voluntary manslaughter. As we have already pointed out, however, "[v]oluntary manslaughter is defined as causing the death of another person under circumstances that would constitute murder in the second degree, except that the death was caused under the influence of sudden passion arising from adequate cause." Payne, 488 S.W.3d at 164. "Distinctively, voluntary manslaughter includes an additional element not present in first-degree or second-degree murder-that is, the presence of sudden passion arising from adequate cause." State v. Edwards, 530 S.W.3d 593, 605 (Mo. App. E.D. 2017). This means, although voluntary manslaughter is a lesser included offense of second-degree murder, if one is guilty of voluntary manslaughter, one will have committed every element of second-degree murder, with the added element of sudden passion arising upon adequate cause. See Section 565.023. Consequently, when Appellant admitted to each element of second-degree murder, he did not contradict a possible voluntary manslaughter defense; he merely omitted the additional element. Again, contrary to the motion court's findings, the record does not refute the claims in his amended motion.
Appellant claims in his amended motion that if trial counsel had discussed a voluntary manslaughter defense with him, he would have chosen to proceed to trial. "While there is no guarantee that [Appellant] would have successfully convinced a jury that he committed voluntary manslaughter rather than second-degree murder, he was entitled to weigh that option before pleading guilty." Wiggins, 480 S.W.3d at 384. We reverse the motion court on Point I, and remand for an evidentiary hearing to determine whether Appellant's trial counsel discussed and investigated a possible defense theory based on voluntary manslaughter before advising Appellant to plead guilty.
Point II
In his second point, Appellant makes essentially the same claim as in Point I, except the defense which trial counsel failed to discuss with Appellant was self-defense.
Because Appellant requests an evidentiary hearing under Rule 24.035 involving a claim of ineffective assistance of counsel, he must allege facts, unrefuted by the record, that show (1) trial counsel's performance fell below an objective standard of skill, care and diligence reasonably expected of a competent attorney, and (2) he was prejudiced by such failure. Webb, 334 S.W.3d at 128. In the context of a guilty plea, "prejudice" means, but for his counsel's deficient performance, there is a reasonable probability he would not have pled guilty and insisted upon a trial. Id. Failure by defense counsel to discuss a viable defense at trial before a plea may constitute ineffective assistance of counsel. Wiggins, 480 S.W.3d at 383 ; see also Bequette, 161 S.W.3d at 908.
We find the motion court did not clearly err in denying this claim. First, unlike voluntary manslaughter, "[s]elf defense is not a technical or sophisticated legal defense that is beyond the knowledge of a lay person." Muhammad, 367 S.W.3d at 663. Like in Muhammad, the record before us does not indicate Appellant was unaware of the simple and commonly known concept of self-defense before pleading guilty. Id.
Even if Appellant was unaware of the concept of self-defense, the facts averred in his amended motion would not support a self-defense instruction at trial.
*103 Appellant pled that in the course of the fight he knocked Victim unconscious. Then, as Victim lay unconscious on the ground, he stomped on his throat and strangled him to death.
"A person shall not use deadly force upon another person ... unless: (1) He or she reasonably believes that such deadly force is necessary to protect himself ... against death, [or] serious physical injury ..." Section 563.031.2, RSMo Cum. Supp. 2013. "[D]eadly force cannot be used to repel a simple assault and battery." State v. Wiley, 337 S.W.3d 41, 44-45 (Mo. App. S.D. 2011). Even assuming Victim was the initial aggressor, his aggression did not justify the level of force Appellant employed. Even if Appellant reasonably believed Victim was about to apply a "lethal bear hug," any privilege to respond with deadly force was extinguished when Victim was knocked unconscious. Use of force in self-defense is justified to prevent "the use or imminent use of unlawful force" by another. Section 563.031, RSMo Cum. Supp. 2013 (emphasis added). "The self-defense instruction is not available when the victim is no longer threatening the defendant," but rather has been rendered unconscious. State v. Davidson, 941 S.W.2d 732, 735 (Mo. App. E.D. 1997). Although Victim may have continued to be upset over their fight if he had ever regained consciousness, this possibility is insufficient to justify Appellant executing him as he lay prone on the floor.
Even if Appellant was unaware of the concept of self-defense, and even if trial counsel never discussed or investigated it, it was not available to him as a viable defense. Thus, Appellant could not have been prejudiced by the facts averred in his amended motion. Point II is denied.
Point III
In his final point on appeal, Appellant claims trial counsel was ineffective for failing to object to the State reading from a letter during sentencing purportedly authored by Appellant, which discussed the commission of the offense. Appellant claims the letter was inflammatory and prejudiced him in that it resulted in a harsher sentence than he would have otherwise received.
A claim that trial counsel was ineffective during sentencing is cognizable under Rule 24.035. Griffin v. State, 937 S.W.2d 400, 401 (Mo. App. E.D. 1997). To prevail on this claim, Appellant must show trial counsel's performance was deficient, and prejudice resulted. Rush v. State, 366 S.W.3d 663, 666 (Mo. App. E.D. 2012). In the context of sentencing hearing, prejudice is proven when Appellant establishes "that but for counsel's deficient performance, there is a reasonable probability he would have received a lesser sentence." Id.
Appellant argues, and we agree, the letter was highly prejudicial to him. The letter reflects Appellant had no remorse after the killing. In fact, he professes satisfaction with his actions and a desire to commit future killings. It also references his affiliation with a prison gang that targets other offenders who have committed crimes against children, as Victim had. While this is doubtlessly damning information, the question is whether trial counsel was ineffective for failing to object to it, forcing the State to lay a foundation for its admission.
The motion court found he was not. It concluded that "counsel instead selected the strategy of allowing the letter to be read (perhaps knowing the state may produce a witness to lay the foundation which would open the door to even more damning testimony)."
We can find no support in the record that the lack of objection from trial counsel *104 was a strategic decision. The motion court denied Appellant's amended motion without an evidentiary hearing. Trial counsel was never given an opportunity to explain whether the lack of an objection was strategy or not. While the motion court's conjecture is one plausible explanation, it has no specific support in the record. The motion court's conclusion that forgoing an objection "was a part of trial strategy is unsupported by the record, and thus mere speculation." Chambers v. State, 781 S.W.2d 116, 117 (Mo. App. E.D. 1989).
However, in order to show ineffective assistance of counsel, the facts averred in Appellant's motion must at least facially establish he was prejudiced by trial counsel's failure to object. Rush, 366 S.W.3d at 666. Although the State did not call any witnesses to authenticate the letter, State's counsel claimed the letter was confiscated from an inmate who received it from Appellant, matched handwriting in letters known to have been written by Appellant, and was signed under Appellant's prison pseudonym. Had the State been forced to establish each of these facts through witness testimony, this would very likely have been sufficient to authenticate the letter. See Section 490.640; see also State v. Swigert, 852 S.W.2d 158, 163 (Mo. App. W.D. 1993) (trial court given wide latitude to admit or exclude evidence).
Nowhere in Appellant's amended motion does he allege the State would not have been able to lay foundation, as it claimed it could. Nor does he refute being the author of the letter. Even if trial counsel had objected to the letter, if the State was able to authenticate it afterwards, the result would have been the same. Trial counsel cannot be ineffective for failing to make an objection which would not actually result in the exclusion of the evidence. Clay v. State, 310 S.W.3d 733, 737 (Mo. App. W.D. 2010). Taking all facts averred in Appellant's amended motion as true, it establishes neither trial counsel's ineffectiveness nor prejudice.
Although the motion court erroneously concluded trial counsel's not objecting to the letter was strategic without support from the record, it nonetheless reached the correct result. "Where the trial court makes findings of fact and conclusions of law, a proper result will be affirmed even if one of the conclusions is in error." White v. State, 939 S.W.2d 887, 893 (Mo. banc 1997).
Conclusion
The judgment of the motion court is affirmed as to Points II and III of Appellant's appeal. We grant Appellant's Point I and remand to the motion court to hold an evidentiary hearing to determine whether trial counsel discussed and investigated a potential trial defense based on a lesser included charge of voluntary manslaughter.
Lawrence E. Mooney, J., and James M. Dowd, J., concur.

All rule references are to Mo. R. Crim. P. (2017) unless otherwise noted.

All statutory references are to RSMo 2000 unless otherwise noted.