

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD84590 |
| | ) | |
| DANA RAY DAY, JR., | ) | FILED: September 6, 2022 |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cole County**
**The Honorable Jon E. Beetem, Judge**

**Before Division One: Janet Sutton, P.J.,**
**and Alok Ahuja and Karen King Mitchell, JJ.**

Following a jury trial in the Circuit Court of Cole County, Dana Day was convicted of first- and second-degree assault, and sentenced to twenty-five years' imprisonment. Day appeals. He argues that the State failed to present sufficient evidence to prove that he acted with sudden passion arising out of adequate cause, as required to sustain his conviction of second-degree assault. We affirm.

## Factual Background

In addressing a challenge to the sufficiency of the evidence to support a criminal conviction, "'[t]he evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict.'" *State v. Stewart*, 560 S.W.3d 531, 533 (Mo. 2018) (citation omitted). Seen from that perspective, the evidence at trial established the following:

The victim, Taeveon Fowler, had a long-standing relationship with N.D. in which he frequently abused her. The couple had a child together, and Fowler was

living with N.D. in May 2017, in the week before he died. On the night of May 16, 2017, Fowler and N.D. had a physical altercation, and he stole $200 from her. The next day, N.D. arranged to meet Fowler at a Family Dollar store in downtown Jefferson City at 10:00 p.m. so that he could return her money. N.D. asked her half-brother, Defendant-Appellant Dana Day, to be present to protect her.

N.D. drove to the meeting with her son and her nephew in the back seat of her car. Day was already at the Family Dollar when N.D. arrived. Fowler eventually approached and entered the front passenger seat of N.D.'s car. Fowler gave N.D. $50 of what he owed her, and she agreed to drive Fowler to the apartment where he was staying. However, just a few streets from the Family Dollar, the couple began to argue, and N.D. stopped in the middle of the street. Coincidentally, Day had walked to the same area to meet a friend. When he heard the couple arguing inside the car, Day approached the passenger-side door.

N.D. told Day that Fowler had beaten and stolen money from her the previous night. In response, Fowler yelled "Bitch, I don't care who . . . you tell, I beat your ass in front of anybody." N.D.'s son and nephew were crying and fearful in the car's back seat. N.D. asked Day to get Fowler out of her car. As Fowler extended his left leg over the console to step on the gas pedal of N.D.'s vehicle, Day dragged Fowler out of the car. N.D. yelled that Fowler had a gun. Day testified later that he felt he had to defend his sister, and he feared Fowler could shoot him, his sister, or his nephews, or that Fowler could drive off with his sister and nephews, and cause them harm at another location.

Once out of the car, Day and two of his associates began punching and kicking Fowler. Day testified that Fowler did, in fact, have a gun, and that he punched Fowler to wrestle the gun away. Fowler managed to escape from the men who were beating him. As he ran down the street, Fowler was shot in the left buttock. The bullet struck Fowler's pelvis and traveled upward through his torso,

causing internal injuries and ultimately his death. The evidence was unclear whether Day or one of his associates fired the fatal shot.

In a Third Amended Information, Day was charged with murder in the second degree (Count I), assault in the first degree (Count II), and assault in the second degree (Count IV). (Counts III and V were dismissed without prejudice before trial.) Count II charged Day with first-degree assault for shooting Fowler in the buttocks, while Count IV charged Day with second-degree assault for "attempt[ing] to cause serious physical injury to [Fowler] under the influence of sudden passion arising from adequate cause by pulling him from a car and striking him with his fists and feet." The assault counts alleged that Day had acted alone or in concert with others. Count I charged Day with second-degree murder on a felony murder theory, alleging that Fowler had been killed during the perpetration of the assaults charged in Counts II and IV.

The jury convicted Day of the two assault counts, but acquitted him of second-degree murder. The circuit court sentenced him to twenty-five years' imprisonment on Count II, and ten years' imprisonment on Count IV, with the sentences ordered to run concurrently.

Day appeals.

### Standard of Review

"To determine whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but, rather, 'accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore[s] all contrary evidence and inferences.'" *State v. Naylor*, 510 S.W.3d 855, 858-59 (Mo. 2017) (citing *State v. Holmes*, 399 S.W.3d 809, 812 (Mo. banc 2013)). "This Court's review is limited to determining whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable

3

doubt." *State v. Letica*, 356 S.W.3d 157, 166 (Mo. banc 2011). "This is not an assessment of whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder 'could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011) (quoting *State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010)).

**Analysis**

In his single Point on appeal, Day argues that the evidence at trial "did not prove beyond a reasonable doubt that [he] acted out of sudden passion arising from adequate cause," as necessary to support his conviction on Count IV for second-degree assault.[1] Day argues that his conviction for second-degree assault should be vacated, and that the Court should instead enter a conviction for the lesser-included offense of assault in the third degree, and remand the case for resentencing. We disagree.

The existence of sudden passion arising from adequate cause distinguishes first- and second-degree assault. Section 565.050.1[2] provides that "[a] person commits the offense of assault in the first degree if he or she attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." Recognizing that the existence of sudden passion may mitigate the seriousness of the offense, the General Assembly defined second-degree assault to include the circumstance in which an individual "[a]ttempts to kill or knowingly causes or

---

[1]     The Jurisdictional Statement of Day's Brief claims that he is challenging the sufficiency of the evidence to support both of his assault convictions. However, the existence of sudden passion is relevant only to Day's conviction for second-degree assault.

[2]     Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri.

4

attempts to cause serious physical injury to another person under the influence of sudden passion arising out of adequate cause . . . ." § 565.052.1(1).

Sudden passion means "passion directly caused by and arising out of provocation by the victim . . . which passion arises at the time of the offense and is not solely the result of former provocation." § 565.002(15). Sudden passion is supported by "adequate cause" when the provocation by the victim "would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." § 565.002(1).

> To be "adequate," the provocation must be of a nature calculated to inflame the passions of the ordinary, reasonable, temperate person. . . . [T]here must be a sudden, unexpected encounter or provocation tending to excite the passion beyond control. Passion may be rage or anger, or terror, but it must be so extreme that for the moment, the action is being directed by passion, not reason. . . . Furthermore, while words, gestures or other actions may give rise to provocation it was the rule at common law and the general long-standing rule in Missouri that words, no matter how opprobrious or insulting are not sufficient to show "adequate provocation."

*State v. Fears*, 803 S.W.2d 605, 609 (Mo. 1991) (quoting *State v. Simmons*, 751 S.W.2d 85 (Mo. App. E.D. 1988). "[W]hile words alone are insufficient to show adequate provocation, little more is required – a mere tweaking of the nose has been found sufficient." *State v. Avery*, 120 S.W.3d 196, 206 (Mo. 2003) (citations omitted), overruled on other grounds by *State v. Barnett*, 577 S.W.3d 124, 132-33 n.10 (Mo. 2019).

Day admits that "[t]he evidence was sufficient to show that [he] attempted to cause serious physical injury to Fowler." Thus, Day effectively admits that there was sufficient evidence to convict him of *first-degree* assault. He argues, however, that the State failed to prove "sudden passion arising out of adequate cause," the circumstance which *reduces* first-degree assault to second-degree assault.

5

Because Day's sufficiency-of-the-evidence argument would establish his guilt of a *greater* offense, that argument is foreclosed by § 545.030.1(17), which provides that

> [n]o indictment or information shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected [¶] . . . [b]ecause the evidence shows or tends to show [the defendant] to be guilty of a higher degree of the offense than that of which he is convicted . . . .

"Sudden passion arising from adequate cause" plays a similar role in homicide offenses as in assault offenses: the existence of sudden passion reduces what would otherwise be second-degree murder to voluntary manslaughter. *See* § 565.023.1(1). In *State v. Gaston*, 897 S.W.2d 136 (Mo. App. W.D. 1995), the Court applied § 545.030.1(17) to prevent a defendant from arguing that there was insufficient evidence to establish "sudden passion" to support his conviction of voluntary manslaughter, because the effect of the defendant's argument would be to establish his guilt of second-degree murder. The Court explained:

> The problem with this [sufficiency-of-the-evidence] argument is that Appellant is now claiming that the evidence adduced at trial showed he committed a higher offense than that for which he was convicted, voluntary manslaughter. If Appellant's point is taken literally, he is saying he is more likely guilty of second degree murder rather than voluntary manslaughter, because of the absence of the "sudden passion & adequate cause" elements.
>
> Appellant's claim must fail, due to a "defendant's protection" statute, which precludes the state from charging defendant with a greater crime if the evidence supports the guilt, but the defendant is on trial for a lesser offense. § 545.030.1(17) RSMo 1986. More specifically, the statute provides that no criminal trial may be in any manner affected because the evidence shows the defendant to be guilty of a higher degree of the offense for which he was convicted. *Id.* In applying § 545.030.1(17) to this case, the fact that the evidence may show Appellant to be guilty of a higher degree of homicide than that for which he was convicted, will not affect the outcome of the trial on the lesser charge.

*Id.* at 137-38.

Other cases have similarly invoked § 545.030.1(17) to prevent defendants from arguing that the absence of evidence of "sudden passion" defeated their convictions of voluntary manslaughter. *See, e.g., State v. Simpson*, 315 S.W.3d 779, 785-86 (Mo. App. W.D. 2010) ("section 545.030.1(17) validates a conviction for voluntary manslaughter even though the evidence may have supported conviction for a higher degree of homicide"); *State v. Lewis*, 955 S.W.2d 563, 566 (Mo. App. W.D. 1997) ("Lewis does not contest that without the sudden passion element the evidence would tend to establish his guilt of second degree murder, so, pursuant to § 545.030.1(17), RSMo 1994, his [sufficiency-of-the-evidence] contention is without merit."); *see also Graven v. State*, 343 S.W.3d 762, 766 n.3 (Mo. App. S.D. 2011) (a defendant was not entitled to withdraw his guilty plea to voluntary manslaughter based on the lack of a factual basis to establish sudden passion in his plea colloquy, since "[h]is argument amounts to nothing more than an assertion that he is guilty of a higher degree of homicide than he was actually convicted of committing").

The *Graven* decision suggests an additional basis for rejecting Day's sufficiency-of-the-evidence argument: that sudden passion is not truly an "element" of the offense of second-degree assault, which the State bears an affirmative burden of proving. In *Graven*, the Southern District rejected an offender's claim that evidence of sudden passion was a required part of the factual basis for his guilty plea to voluntary manslaughter. The Court explained:

> Graven's argument is based upon the premise that the existence of sudden passion is an element of the crime of voluntary manslaughter. Because that premise is incorrect, the argument fails. Acting under the influence of sudden passion arising from adequate cause is a special negative defense to the crime of conventional second-degree murder. If there is evidence that the defendant killed the victim under the influence of sudden passion arising from adequate cause, that issue is submitted as an element of the second-degree murder instruction. If requested by a party or the court, an instruction may be given on voluntary manslaughter. That crime is submitted via MAI–CR 3d 314.08, which contains no reference to sudden passion.

7

In the case at bar, the third amended information did not charge Graven with second-degree murder. Instead, voluntary manslaughter was the highest degree of homicide charged. The State is permitted to do so when it decides not to contest the existence of sudden passion arising from adequate cause. *By charging Graven only with voluntary manslaughter, the State conceded the issue of sudden passion and removed it from the case.* Accordingly, the issue of sudden passion was not a required part of the factual basis for Graven's guilty plea to the charge of voluntary manslaughter. At a minimum, the factual recital was sufficient to show that Victim's death was caused by beating and that it was Graven's purpose to cause serious physical injury to Victim. These facts are sufficient to support a conviction for voluntary manslaughter.

*Id.* at 765 (emphasis added; citations omitted).

As *Graven* recognizes in an analogous context, "sudden passion" is not properly considered to be an *element* of second-degree assault. Sudden passion is a "special negative defense" to the *higher-level* offense of assault in the first degree. *See also, e.g., State v. Mack*, 624 S.W.3d 436, 455 (Mo. App. E.D. 2021) (discussing similar "sudden passion" defense to conventional second-degree murder). As recognized by the Missouri Approved Instructions, "[a]ssault in the first degree is 'mitigated' to assault in the second degree when the defendant acted under the influence of sudden passion arising out of adequate cause." MAI-CR4th 419.08, Note on Use 4. Section 565.052.2 specifies that "[t]he defendant shall have the burden of injecting the issue of influence of sudden passion arising from adequate cause" under § 565.065.1(1). Once the defendant injects the issue, the State has the burden of proving an *absence* of sudden passion, beyond a reasonable doubt, as an element necessary to sustain a conviction for *first-degree* assault. *Mack*, 624 S.W.3d at 455; *State v. Price*, 928 S.W.2d 429, 431 (Mo. App. W.D. 1996) (observing that sudden passion "is an element of the crime and when properly introduced, it requires a finding by the jury that the defendant did not commit the murder under the influence of sudden passion to find the defendant guilty of second degree murder"); *see also* MAI-CR4th 419.08 (paragraph "Second"). Although the *absence*

8

of sudden passion may be an element the State is required to prove to establish a defendant's guilt of *first*-degree assault, the Missouri Approved Instructions do *not* require that the State establish the *presence* of sudden passion to support a conviction of second-degree assault – even when this form of second-degree assault is submitted as a "stand-alone" offense. *See* MAI-CR4th 419.12, and Note on Use 3(B).

Treating sudden passion as an *element* of second-degree assault would lead to absurd results. Commonly, second-degree assault under the influence of sudden passion is submitted as a lesser offense to the charged offense of first-degree assault. If sudden passion were considered to be an affirmative element of second-degree assault, the State would be required to take inconsistent positions: the State would have to argue on the one hand that it had proven the *absence* of sudden passion beyond a reasonable doubt (to support a conviction of *first*-degree assault); while arguing in the alternative that it had proven the *existence* of sudden passion beyond a reasonable doubt (to support a conviction of *second*-degree assault). Further, because § 565.065.2 provides that *the defendant* must inject the issue of sudden passion into an assault prosecution, a defendant could arguably prevent the State from proving second-degree assault as a stand-alone offense, by the simple maneuver of refusing to introduce evidence of sudden passion at trial. "Such situations may be rare, but may arise where the state wishes to prosecute the [crime] as a knowing [assault] or with purpose to cause serious physical injury but does not wish to contest the existence of sudden passion arising from adequate cause." *State v. Lewis*, 955 S.W.2d 563, 565 (Mo. App. W.D. 1997).

Addressing similar issues, courts in other jurisdictions have concluded that sudden passion is a mitigating factor that justifies conviction of a lesser offense, rather than a distinct element of the lesser offense which the State is required to prove. *See Isom v. Indiana*, 651 N.E.2d 1151 (Ind. 1995) (holding that verdict

9

director for voluntary manslaughter should not list "sudden heat" as an essential element of the crime, because "[s]udden heat is not an element of voluntary manslaughter," but is instead "a mitigator that reduces what would otherwise constitute murder to voluntary manslaughter"); *State v. Peterson*, 290 So.2d 307, 310 (La. 1974) ("the presence of passion is not an additional element of the crime of manslaughter; rather, it is a factor which exhibits a degree of culpability less than that present when the homicide is committed without passion caused by provocation").

Several Missouri cases refer to sudden passion as an "element" of voluntary manslaughter or second-degree assault. None of these cases holds, however, that sudden passion is an "element" in the sense that the State has the affirmative burden of proving the existence of sudden passion beyond a reasonable doubt. Instead, the majority of the cases referring to sudden passion as an "element" address the question whether a defendant was entitled to a lesser-offense instruction on voluntary manslaughter or second-degree assault. The decisions emphasize that the lower-level offense is not a "nested" lesser-included offense, requiring proof of only a subset of the facts supporting a greater offense; instead, a defendant must present additional evidence of sudden passion before a lesser-offense instruction is warranted.[3] In other cases, the Court was addressing claims in a post-conviction relief proceeding that an offender had pleaded guilty without being advised by counsel of the possible applicability of a lesser offense based on

---

[3]     *See, e.g., State v. Clay*, 533 S.W.3d 710, 716–17 (Mo. 2017); *State v. Smith*, 522 S.W.3d 221, 227 (Mo. 2017); *State v. Welch*, 600 S.W.3d 796, 807 (Mo. App. E.D. 2020); *State v. Ayansu*, 558 S.W.3d 135, 139 (Mo. App. E.D. 2018); *State v. Edwards*, 530 S.W.3d 593, 605-06 (Mo. App. E.D. 2017); *State v. Casey*, 517 S.W.3d 570, 573-74 (Mo. App. E.D. 2016); *State v. Payne*, 488 S.W.3d 161, 165 (Mo. App. E.D. 2016); *State v. Davis*, 474 S.W.3d 179, 187-88 (Mo. App. E.D. 2015)

sudden passion.[4] Finally, in *State v. Jensen*, 524 S.W.3d 33 (Mo. 2017), the Supreme Court observed that voluntary manslaughter includes a "differential element . . . requiring the jury to find that the defendant acted under a sudden passion," in the course of explaining that the submission of a voluntary manslaughter instruction did not "test" "whether [the defendant] acted knowingly instead of recklessly." *Id.* at 40. *Jensen* held that, because voluntary manslaughter included the "differential element" of sudden passion, the submission of a voluntary manslaughter instruction did not render an involuntary manslaughter instruction unnecessary. *Id.* at 40. None of the cases referring to sudden passion as an "element" of a lower-level offense addresses the question we decide here.

The reasoning of *Graven* applies equally here. Sudden passion was not an element of the offense of second-degree assault, which the State was required to prove beyond a reasonable doubt. By charging Day only with *second*-degree assault for his beating of Fowler, "the State conceded the issue of sudden passion and removed it from the case." *Graven*, 343 S.W.3d at 765. It is irrelevant whether evidence existed to support a finding of sudden passion.

In any event, even if the State was required to prove sudden passion beyond a reasonable doubt, it did so in this case. A jury may reasonably find that threats and verbal abuse by an armed victim against a defendant or their loved ones could provoke a person of ordinary temperament and substantially impair their capacity for self-control. *See State v. Redmond*, 937 S.W.2d 205, 209 (Mo. 1996) (evidence was sufficient to inject an issue of sudden passion where victim confronted defendant in a threatening manner with a deadly weapon); *State v. Craig*, 33 S.W.3d 597, 601 (Mo. App. E.D. 2000) (evidence was sufficient to inject an issue of

---

[4]    *See Wynes v. State*, 628 S.W.3d 786, 798 (Mo. App. W.D. 2021); *Kulhanek v. State*, 560 S.W.3d 94, 102 (Mo. App. E.D. 2018); *Wiggins v. State*, 480 S.W.3d 379, 383-84 (Mo. App. E.D. 2015)

sudden passion where victim approached the defendant with a large knife); *State v. Taylor*, 770 S.W.2d 531, 534-35 (Mo. App. E.D. 1989) (victim's erratic driving before assault, which "created a life-threatening danger" to defendant and others, combined with defendant's perception of danger to a friend, was sufficient to permit a jury to find sudden passion).

A reasonable juror could have found Day was adequately provoked into a sudden passion when he learned that his sister had been beaten by Fowler the previous night; heard Fowler yell "Bitch, I don't care who . . . you tell, I beat your ass in front of anybody"; heard his sister yell that Fowler had a gun; and saw Fowler attempting to take control of his sister's vehicle and drive away with his sister and Day's nephews. A reasonable person in Day's position would be outraged to hear that Fowler had physically abused and stolen from his sister, and then to hear Fowler threaten to continue the abuse, no matter who else was present. Given N.D.'s warning that Fowler was armed with a gun, Day could reasonably fear that Fowler could shoot Day, his sister, or his nephews, or that Fowler could drive N.D.'s vehicle to a more secluded location and harm her or the children there. These circumstances, taken together, amply support the jury's finding that Day had acted from sudden passion arising out of adequate cause.

## Conclusion

We affirm the judgment of the circuit court.

_____
Alok Ahuja, Judge

All concur.

12